UNITED DELIVERIES, INC., A CORPORATION, PLAINTIFF-RESPONDENT, v. NORWICH UNION FIRE INSURANCE SOCIETY, LTD., A CORPORATION, DEFENDANT-APPELLANT.

Submitted May 15, 1945—Decided September 27, 1945.

For the appellant, *Gennet & Rafner* (*Samuel A. Gennet*, of counsel).

For the respondent, *Frazer, Stoffer & Jacobs* (*Nathan L. Jacobs*, of counsel).

The opinion of the court was delivered by

McGEEHAN, J. Plaintiff sued defendant on an insurance policy issued to plaintiff by the defendant; the cause was submitted to the Circuit Court for its determination, without a jury, on the pleadings and a stipulation of facts; judgment for plaintiff was entered December 6th, 1944, for $3,512.19 with interest from November 20th, 1943; defendant appeals.

Plaintiff is an intrastate common carrier occupying a building in Newark as the focal point of its business of common carriage. Plaintiff's customers send their merchandise to said premises to be held there until carried by plaintiff's trucks

over scheduled routes. At the end of each day's deliveries, plaintiff's trucks return to, and enter, the building and are placed next to the loading areas so that during the night other merchandise can be checked out and loaded into them in preparation for the next day's deliveries. Plaintiff maintained one gasoline pump inside the building and adjacent to the exit, and all fuel from the pump was used solely in filling the tanks of plaintiff's trucks. All repairs to plaintiff's trucks were made by others as independent contractors at their places of business.

On May 1st, 1943, while the policy was in effect, plaintiff at its building in Newark caused certain merchandise to be loaded on two of its motor trucks for forwarding. The loading occurred in the early morning and the two trucks were left standing inside the building of the plaintiff in readiness for the arrival of the operating crews at the commencement of business the same day. During this interval, the two trucks and their contents were stolen, and the plaintiff became legally liable to the owners. Neither of the stolen trucks carried 200 cases of merchandise, but in the aggregate the merchandise on said trucks and in plaintiff's premises at the time of the theft exceeded 200 cases. The stolen merchandise involved in this suit had been retained at said premises for periods in excess of forty-eight hours (Sundays and legal holidays excluded) prior to such loading. The only employee of plaintiff in attendance at the premises at the time of theft was its night watchman. A plan of the interior of plaintiff's premises as of the time the theft occurred shows seven vehicles (including the two stolen vehicles) and their location therein. Plaintiff immediately gave notice of occurrence of loss to defendant, and filed proof of loss with it on September 20th, 1943, of a $6,882.27 claim of loss. Defendant, under agreement of September 28th, 1943, paid plaintiff $3,370.08, and as to the balance of $3,512.19, refused payment because it denied its legal liability.

The policy consists of a printed form, one printed endorsement and three typewritten endorsements, and is designated "Motor Carriers Cargo Liability Policy." Of the four endorsements, only two typewritten endorsements need be

referred to—one which we designate "Endorsement (a)" consisting of 21 numbered paragraphs, and the other which we designate "Endorsement (b)" consisting of five unnumbered paragraphs. This policy is a private contract of insurance in relation to which the legislature has not prescribed a standard form. The only signatures upon the policy are those of defendant's agent, and there is no proof that plaintiff partook in the drafting; therefore the language must be deemed to be defendant's. Under these circumstances, any ambiguity in the terms of the policy should be resolved by giving a meaning which is most favorable to the insured. *Smith* v. *Fidelity and Deposit Co.*, 98 *N. J. L.* 534.

Point 1 of defendant is that the property in question was detained in plaintiff's custody for a period in excess of forty-eight hours, and defendant is, therefore, not liable under its policy.

The printed form provides: "This insurance is to indemnify the assured * * * by reason of their legal liability as a carrier, bailee or warehouseman * * * on account of direct loss or damage caused by perils hereinafter stipulated to lawful goods and merchandise carried for hire, consisting of liquors only while loaded in or on vehicle(s) described below owned and operated by the assured while in due course of transit in the custody and control of the assured * * *" and. "This policy does not insure * * * property in or on the premises of the assured or any garage or other premises where the vehicle(s) described are usually kept * * *." This coverage is limited (1) to liquors, (2) while loaded in or on vehicles, (3) owned and operated by assured, (4) while in due course of transit, (5) in the custody and control of assured.

The pertinent provisions of Endorsement (a) are:

"1. In consideration of the stipulations and premium hereinafter mentioned, this policy insures the LEGAL LIABILITY of the assured as carrier or bailee or warehouseman under tariff, contract, bill of lading or shipping receipt issued by the Assured, for loss or damage directly due to perils hereinafter specified, on shipments of lawful goods or merchandise, the property of others while same are in the custody or possession

of the Assured or in transit on motor trucks or trailers owned or operated by or for the Assured, including motor trucks, or trailers owned by others and operated in connection with the business of the Assured, within the Continental United States and Canada.

"2. Insurance hereunder attaches as and when liability of the Assured first begins and continues until safely delivered to consignee at final destination, also attaches in respect of returned shipments or parts of same until safely returned to the shipper.

"3. This Company shall not be liable for more than SEVEN THOUSAND FIVE HUNDRED ($7,500.00) DOLLARS on the contents of any one motor truck or on any one trailer at any one time, nor for more than TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS, in any one disaster at any one time. (However, in respect to merchandise while on or off vehicles in the terminals of the Assured and/or in any garage while the merchandise is in due course of transportation, this Company shall not be liable to pay more than TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS.)

"21. It is hereby understood and agreed that the entire contract of insurance is contained in this form and that the printed conditions of this policy are to be considered null and void."

And in paragraph 5 thereof: "This policy DOES NOT INSURE THE ASSURED'S LEGAL LIABILITY for loss or damage:" followed by a list of contingencies, none of which apply to this case. Endorsement (a) substitutes the broad coverage of paragraphs 1 and 2 thereof for the limited coverage of the printed form.

Endorsement (b) contains the controversial paragraph relied on by defendant to support point 1. It provides:

"Also with respect to risk in terminals, this insurance shall cover the liability of the assured (as defined in this policy) while the property insured is temporarily detained in garage or garages (including garages of the assured) for a period of 48 hours, except when a Sunday or Legal Holiday intervenes and then for the extra time of such Sunday or Legal Holiday."

Concededly, the property in question was retained for a period in excess of forty-eight hours (Sundays and legal holidays excluded) in the plaintiff's building in Newark, which building is referred to in the policy as "the terminal of the assured." Defendant seeks an interpretation of this paragraph as an exclusion of coverage in this case. The language itself suggests additional coverage, "Also * * * this insurance shall cover the liability of assured * * * while the property insured is temporarily detained in garage or garages" rather than an exclusion of coverage, and the forty-eight hour period mentioned therein is a period applying to this additional coverage. If it was intended as additional coverage, it cannot apply to goods and merchandise of others held in the terminal of the assured for carriage, because paragraphs 1 and 2 of Endorsement (a) cover such goods and merchandise without time limitation, and no additional coverage would be needed. Here we are met with provisions of the contract, taken from different sections, which are irreconcilable. If the intent had been to put a time limit of forty-eight hours on property insured while in the terminal of the assured, it would normally be included in the exceptions contained in paragraph 5 of Endorsement (a), or if added later, the same or similar language would be used and no ambiguity would be involved.

Paragraph 3 of Endorsement (a) speaks of "merchandise while on or off vehicles in the terminals of the Assured and/or in any garage while the merchandise is in due course of transportation," thus recognizing two distinct stages: (1) goods in a terminal, and (2) goods in a garage in due course of transportation. "Terminal" is mentioned again in paragraph 18 of Endorsement (a) in speaking of trucks "at the time of departure from the assured's terminal" and again in paragraph 19 thereof "the terminal of the assured at No. 34 Longworth Street, Newark." Thus we find a distinction between "terminal" and "garage" until we come to the controversial third paragraph of Endorsement (b), which provides: "Also with respect to risk in terminals, this insurance shall cover the liability * * * while the property insured is temporarily detained in garage or garages (including

garages of the assured)." We note also that the use of the word "temporarily" with "detained in garage or garages" is an indication that this paragraph was intended to apply not to merchandise held in the main building of plaintiff, but rather to merchandise detained for a short period in some garage or garages while in transit from or to the main building of plaintiff.

We find ourselves in much the same situation as the Circuit Court of Appeals in *Schmutz* v. *Employees' Fire Insurance Co.*, 76 *Fed. Rep.* (*2d*) 119, and we paraphrase their language. We must struggle as we can to impose coherence upon language put together at random, but we may and should insist upon the most unsparing use of the canon *contra proferentem;* that is, upon the underwriter disclosing a plain path out of the jungle he has created. The defendant has not done so here. We conclude that the provisions of the controversial paragraph of Endorsement (b) have no application to the facts in this case.

Point 2 of defendant is that the assured increased the hazards and risks and the company is therefore not liable. Defendant relies on its construction of paragraph 18 of Endorsement (a) to support this point. Paragraph 18 provides:

"18. It is hereby agreed that any truck or trailer carrying a shipment of 200 cases of liquors, wines and/or beer at the time of departure from the Assured's terminal,* shall have at least one employee in addition to the driver, failing which the Company shall not be liable for any loss or damage caused by theft, hi-jack, or non-delivery in respect of such shipment. *and at all times when 200 or more cases are at risk thereon."

It is to be noted that paragraphs 18 and 19 contain the provisions for attendance. Paragraph 19 provides:

"19. It is hereby agreed that the terminal of the Assured at No. 34 Longworth Street, Newark, New Jersey, shall have at least one employee in attendance at all times, or if no employee is in attendance shall be equipped with approved Burglar Alarm protection, failing which the Company shall not be liable for any loss or damage caused by theft or burglary during the time of such failure."

Defendant urges an interpretation of the word "thereon" in paragraph 18 as meaning the assured's premises, thus requiring a driver to be in attendance in addition to "at least one employee." There is no ambiguity in the language; "thereon" clearly refers to "truck or trailer," and paragraph 18 has no application to the facts in this case. Paragraph 19 was complied with and the hazards and risks were not increased in violation of the policy.

Point 3 of defendant is that the assured is not entitled to interest on its claim. Defendant argues that the claim was not liquidated until entry of judgment. Under the policy, the amount of loss was due and payable sixty days after presentation and acceptance of proofs of interest and loss at the office of the company. Proof of a $6,882.27 loss was filed with the defendant on September 20th, 1943. By written agreement of September 28th, 1943, defendant agreed to pay $3,370.08 of said claim, and as to the balance of $3,512.19, defendant denied legal liability. Such balance was a liquidated claim and defendant is liable for interest thereon from the date on which payment was due under the policy. *J. Jacob Shannon & Co.* v. *Continental Casualty Co.,* 106 *N. J. L.* 200; *Ciccone* v. *Colonial Life Insurance Co.,* 110 *Id.* 276.

The judgment under appeal is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, COLIE, OLIPHANT, WELLS, DILL, FREUND, McGEEHAN, JJ. 13.

*For reversal*—PARKER, RAFFERTY, JJ. 2.