The judgment of the district court will be affirmed.

Joseph **POLITO** and Loretta Polito, h/w, Appellants

v.

**CONTINENTAL CASUALTY COMPANY.**

No. 82–5119.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 30, 1982.

Decided Oct. 1, 1982.

---

Samuel Mandel, Uliase, Aberman & Mandell, Cherry Hill, N.J., for appellants.

Robert E. Edwards, Montano, Summers, Mullen & Manuel, Cherry Hill, N.J., for appellee.

Before GIBBONS and HUNTER, Circuit Judges, and POLLAK,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Joseph and Loretta Polito appeal from a final judgment entered on a jury verdict and from an order denying their motions for a new trial, for judgment notwithstanding the verdict, and for assessment of counsel fees, in their suit against Continental Casualty Company, a fire insurance underwriter which insured their home. They contend that the trial court erred in refusing to submit their case to the jury on a breach of contract theory, in refusing to submit to the jury their claim for intentional infliction of emotional distress, and in refusing to award counsel fees pursuant to N.J.Ct.R. 4:42–9(a)(6). They also contend that the jury verdict against them on the claims which were submitted is against the weight of the evidence and should be set aside. We hold that the court should have submitted the case to the jury on a contract theory which would have justified an award of pre-judgment interest, and that attorneys fees should have been awarded under N.J.Ct.R. 4:42–9(a)(6). Thus we remand for further proceedings.

### I.

Continental issued a New Jersey standard fire insurance policy covering the Politos' home for the period October 11, 1978 to October 11, 1979. In April of 1979 the home was damaged in a fire and the Politos filed a claim, which was eventually settled. On September 6, 1979 a second fire occurred, which substantially destroyed the home and its contents. The Politos notified Continental, but were unsuccessful in obtaining a satisfactory payment. They hired Guardian Adjustment Service, a public adjuster, to complete and submit a proof of loss. Guardian on October 24, 1979, filed a proof of loss for the building and a demand for an appraisal.[1] Two other proofs of loss were filed on December 13, 1979, one for the contents of the dwelling and one for additional living expenses incurred as a result of the fire. Continental's response, or lack thereof, to the proofs of loss and demand for appraisal is at issue in this case.

On April 21, 1980 the Politos filed a five count diversity action against Continental, seeking money damages and attorneys fees

---

* Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. N.J.Stat.Ann. 17:36–5.20 (West Supp.1982) provides that every fire insurance policy must contain certain standard provisions, including the following:

 In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the State in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

 . . . . .

 The amount of loss for which this Company may be liable shall be payable thirty days after proof of loss, as herein provided, is received by the Company and ascertainment of loss is made either by agreement between the insured and this Company expressed in writing or by the filing with the Company of an award as herein provided.

for breach of contract, breach of Continental's duty to deal with an insured fairly and in good faith, breach of Continental's fiduciary relationship toward its insureds, fraud, and intentional infliction of emotional distress. The complaint also sought specific performance of the appraisal provisions of the policy, and damages for breach of that provision. The court issued an order directing Continental to show cause on May 2, 1980 why it should not be ordered to comply with the appraisal procedure of the policy. No one appeared for Continental, and the court, after hearing argument on the Politos' behalf, ordered an appraisal. That appraisal, which dealt only with building damage, resulted in a determination that the loss was $30,829. On November 26, 1980 Continental tendered a draft for that amount, on which it inserted the language:

It is understood acceptance of this payment constitutes a full and final release of all claims for fire damage to the dwelling only.

Since they had other claims pending, the Politos rejected that draft. Eventually the parties returned to the court, and after negotiations agreed to the entry on April 15, 1981, of an order requiring Continental to pay $30,829 representing the amount awarded by appraisers with respect to the building loss with the understanding that plaintiffs' causes of action, other than the building loss, would continue. (Appendix of Appellants at 189A). An unconditional draft for $30,829.00 was issued on April 21, 1981.

About the time this draft was issued, Continental filed a motion for an order compelling the Politos to submit to an appraisal as to the building contents loss. By then a pre-trial conference had taken place, and according to the pre-trial order the Politos sought $11,784.00 for contents, and $9,600, the policy limit, for additional living expenses. The pre-trial order indicates that the $9,600 claim was not disputed (Appendix of Appellants at 45A) but that Continental disputed the $11,784.00 contents claim, for which the policy limit is $24,000. (Appendix of Appellants at 44A). An appraisal was ordered, and the building contents loss was fixed at $15,370.00. On May 20, 1980 Continental issued separate drafts for $15,370.00 and $9,600.00.

On June 19, 1981 Continental moved for summary judgment. The court denied that motion and proceeded to trial before a jury. Before testimony began, however, the court granted Continental's motion to exclude from the jury the issue of intentional infliction of emotional distress. Later in the trial the court, pursuant to Fed.R.Civ.P. 51, considered requests to charge. The court ruled that it would not submit the case to the jury on a breach of contract theory. (Appendix of Appellants at 107–109A; 128–129A). It ruled instead that there could be recovery even above the policy limits on a tort theory if Continental acted in bad faith. (Appendix of Appellants at 111A). The court also refused to charge that recovery for consequential damages due to delay could be awarded for a breach of fiduciary duty. (Appendix of Appellants at 115–117A; 129A). Instructed only on the tort theory that Continental acted in bad faith in withholding payment, the jury returned a general verdict of no cause of action. A judgment in favor of Continental was entered on the verdict. Post-trial motions for a new trial, for judgment notwithstanding the verdict, and for an award of attorneys fees were denied, and this appeal followed.

## II.

The breach of contract on which the Politos rely is Continental's failure to adhere to the proof of loss, appraisal and payment provisions of the policy. From the evidence the jury could have found that the Politos submitted a proof of loss and demand for an appraisal on October 24, 1979, and that other proofs of loss were filed in December, 1979. The evidence suggests that it was not until January 17, 1980 that Continental even acknowledged the claim. Its letter did not agree to an appraisal, but offered to pay $28,861 for the building and approximately $4,700 for the contents. It also advised the Politos that they should not continue residing at a motel because from

November 27, 1979 forward Continental would honor only reasonable expenses of a house rental. So far as this record discloses there were no other responses to the demand for appraisal or the proofs of loss until after the complaint was filed. Thus the jury could have found that by delaying the appraisal process and by delaying in making payment of the additional living expense claim on which it never even sought an appraisal the Company breached the insurance contract.

Most states recognize two types of remedies when an insurer fails to settle claims made against it by the insured party. The traditional remedy is for breach of contract. *See* Bess & Doherty, *Survey of Bad Faith Claims in First Party and Industrial Proceedings,* 1982 Ins. Counsel J. 368. Under recent developments in tort law, an insurer can also be sued in tort for failure to settle a claim in good faith. *Id.*

Under a contract theory the insured is generally denied consequential damages for failure to pay the loss, because in a suit for money due under a contract, recovery is limited to the debt plus interest. *See* Note, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend,* 45 Fordham L.Rev. 164, 167 (1976). Punitive damages are not generally available in a breach of contract action. Some courts, recognizing that the parties to insurance contracts do not have equal bargaining power, and that insurance companies, if liability is limited to the amount of the loss plus interest, are encouraged to take advantage of the insured by delaying payments, have awarded consequential damages for breach of contract. *E.g., Reichert v. General Insurance Co. of America,* 59 Cal.Rptr. 724, 428 P.2d 860 (1967), *vacated on other grounds,* 68 Cal.2d 822, 442 P.2d 377, 69

Cal.Rptr. 321 (1968). *See also Asher v. Reliance Insurance Co.,* 308 F.Supp. 847 (N.D. Cal.1970); *Lawton v. Great Southwest Fire Insurance Co.,* 118 N.H. 607, 392 A.2d 576 (1978). New Jersey, however, does not thus far appear to depart from the general rule excluding consequential damages.[2]

New Jersey courts, however, have long followed the doctrine that an insurance company defendant is liable for interest on a claim from the date on which payment was due under the policy. *See United Deliveries, Inc. v. Norwich Union Fire Insurance Soc.,* 133 N.J.L. 393, 399, 44 A.2d 185, 188 (E. & A. 1945) (insurer accepted liability for part of loss due to theft and paid claim but denied liability as to remainder of claim; court held unpaid balance was a liquidated claim and defendant was liable for interest).

In *Rova Farms Resort, Inc. v. Investors Insurance Co.,* 65 N.J. 474, 323 A.2d 495 (1974), following a jury verdict in excess of the policy limits in a personal injury case, the insured brought an action against the insurer for lack of good faith in failing to settle the claim within the policy limits. The New Jersey Supreme Court, noting that a wrongful failure to settle an insurance claim sounds both in tort and contract, held that prejudgment interest could be imposed on the insurer.

At least in the case of a liquidated sum, prejudgment interest has been regarded by our courts as compensatory—to indemnify the plaintiff for the loss of what the monies due him would *presumably* have earned if payment had not been refused. The issue is not whether the plaintiff can prove a loss by virtue of having had to pay interest to get the money or by having lost interest from a bank account or investment through removal of the sum therefrom. The loss,

---

2. In *Lieberman v. Employers Insurance of Wausau,* 84 N.J. 325, 419 A.2d 417 (1980), a doctor brought a breach of contract action against his medical malpractice liability insurer for settlement of a claim without his consent. The New Jersey Supreme Court held that the insurer breached the consent to settlement provision of the policy, and thereby incurred liabil-

ity to its insured. The New Jersey Supreme Court held that the normal damages rules would apply. 84 N.J. at 338–40, 419 A.2d at 425–27. This case is not dispositive of the Politos' claim for consequential damages, however, since they allege a failure to promptly pay an amount due, rather than some other breach of the policy provisions.

rather, is assumed. The basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled. This consideration has controlled, and *interest has been imposed even where, as here, the defendant had in good faith contested the validity of the claim.* Thus, in *Kamens v. Fortugno, supra,* 108 N.J.Super. [544] at 552–553, 262 A.2d 11, it was held that prejudgment interest on a claim, the amount of which is ascertained, is not avoided by honest disputation over legal liability. The court observed that "defendants had the use of the money and *presumably* earned such interest, dividends or other benefits therefrom as were available," whereas the plaintiff was deprived of any such enjoyment. 108 N.J.Super. at 554, 262 A.2d at 16 [emphasis supplied].

65 N.J. at 506, 323 A.2d at 512–13 (citations omitted, emphasis supplied). *See also Small v. Schnucke,* 42 N.J. 407, 201 A.2d 56 (1964) (interest payable on third party's claim arising from auto accident for illegal detention of legitimate claim or indebtedness); *Miller v. New Jersey Insurance Underwriting Ass'n,* 177 N.J.Super. 584, 427 A.2d 135 (Law Div. 1981) (prejudgment interest could be awarded, based on equitable principles, in first-party suit to establish liability of insurer); *Lansco, Inc. v. Department of Environmental Protection,* 138 N.J.Super. 275, 286, 350 A.2d 520, 526 (Ch.Div.1975), *aff'd,* 145 N.J.Super. 433, 368 A.2d 363 (App.Div.1976) (where insurer fails to pay claim for which it is obligated and third party suffers loss of use of its money, compensation for interest is just). *Cf. Kamens v. Fortugno,* 108 N.J.Super. 544, 262 A.2d 11 (Ch.Div.1970) (interest payable on liquidated debt from due date); *Grober v. Kahn,* 88 N.J.Super. 343, 212 A.2d 384 (App.Div.1965), *rev'd on other grounds,* 47 N.J. 135, 219 A.2d 601 (1966) (trial court has discretionary power to grant or withhold interest in

suit for sum due). The cause of action for contract interest can be proved without regard to the good faith of the insurer. *Rova Farms Resort, Inc. v. Investors Insurance Co.,* 65 N.J. 474, 323 A.2d 495 (1974); *Warren v. Employers' Fire Insurance Co.,* 53 N.J. 308, 250 A.2d 578 (1969). Therefore the general verdict on the tort theory on which the case was submitted to the jury is not dispositive of the contract interest claim. Thus the district court should have instructed the jury on the alternative theory of breach of contract with respect to the several policy coverages, and awarded prejudgment interest if the Politos were successful on that cause of action.

### III.

The Politos also sought consequential damages, such as the added costs incurred by virtue of delay in rebuilding because of inflation. In support of their claim for consequential damages they requested an instruction that Continental could be liable for breach of its fiduciary duty to its insureds.

 New Jersey law recognizes that an insurer owes a fiduciary duty to its insured under certain circumstances. In *Lieberman v. Employers Insurance of Wausau,* 84 N.J. 325, 419 A.2d 417 (1980), the New Jersey Supreme Court explained:

> Particularly with respect to the settlement of claims, this Court has stated emphatically that "the relationship of the [insurance] company to its insured regarding settlement is one of inherent fiduciary obligation." While the insurer is not compelled to disregard its own interests in representing or defending an insured, the insured's interests must necessarily come first.

84 N.J. at 336, 419 A.2d at 422–23 (citations omitted). *See also Griggs v. Bertram,* 88 N.J. 347, 443 A.2d 163, 168 (1982); *Rova Farms Resort, Inc. v. Investors Insurance Co.,* 65 N.J. 474, 323 A.2d 495, 505 (1974). In *Rova Farms,* a case upon which the Politos chiefly rely, the New Jersey Supreme Court based its conclusion that a fiduciary relationship existed on the fact that the insur-

ance policy contractually restricted the power of the insured to negotiate and settle claims with third parties under a liability policy. The *Griggs v. Bertram* and *Rova Farms* cases do not necessarily advance the Politos' position since their claim arose out of a first party claim against their insurer.

In several cases, however, the New Jersey Supreme Court has held that all contractual relations imply such a duty:

> In every contract there is an implied covenant that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing." 5 Williston on Contracts § 670, 159–160 (3d ed. 1961).

*Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 130, 207 A.2d 522, 531 (1965). *See also Bak-A-Lum Corp. of America v. Alcoa Building Products, Inc.*, 69 N.J. 123, 351 A.2d 349 (1976); *Association Group Life, Inc. v. Catholic War Veterans of America*, 61 N.J. 150, 293 A.2d 382 (1972).

In *Onderdonk v. Presbyterian Homes of New Jersey*, 85 N.J. 171, 425 A.2d 1057 (1981), the New Jersey Supreme Court elaborated on the doctrine of the implied covenant of fair dealing:

> [W]e have held that "[t]erms will be implied in a contract where the parties must have intended them because they are necessary to give business efficacy to the contract as written." Moreover, in every contract there is an implied covenant of good faith and fair dealing. As a corollary to that proposition it is certainly reasonable to imply that neither party to a contract shall injure the right of the other to receive the fruits of the agreement.
>
> There are also some situations in which a condition will be implied "on grounds of fairness and justice." ...
>
> Where fairness and justice require, even though the parties to a contract have not expressed an intention in specific language, the courts may impose a constructive condition to accomplish such

a result when it is apparent that it is necessarily involved in the contractual relationship.

85 N.J. at 182–83, 425 A.2d at 1062–63 (citations omitted). The doctrine of an implied covenant of fair dealing is fully applicable to insurance contracts. *E.g., Fireman's Fund Insurance Co. v. Security Insurance Co.*, 72 N.J. 63, 367 A.2d 864 (1976); *Association Group Life, Inc. v. Catholic War Veterans of America*, 61 N.J. 150, 293 A.2d 382 (1972). Thus we conclude that the New Jersey courts would recognize that casualty insurers undertake an implied contractual duty, as fiduciaries to parties with whom they have a contractual relationship, to act in good faith and to deal fairly in the settlement of claims, and that such an implied contractual duty supports a claim for consequential damages. Our prediction in this respect is fortified by the provisions of N.J.Stat.Ann. 17B:30–13.1 which lists as unfair claim settlement practices

> [c]ommitting or performing with such frequency as to indicate a general business practice any of the following:
>
> . . . . .
>
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> . . . . .
>
> (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
>
> (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;
>
> . . . . .
>
> (m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence set-

tlements under other portions of the insurance policy coverage....

We conclude, therefore, that the court erred in refusing to submit to the jury the Politos' claim for consequential damages for breach of a contractually based fiduciary duty.

■ That does not end the inquiry, however, for the court submitted to the jury, on a tort theory, the claim of a breach of good faith and fair dealing. The Politos have not suggested how Continental's implied contractual duty differed in any material respect from the tort law duty which was charged. Unless, therefore, we are prepared to hold that the jury's verdict on the tort count should be set aside as unsupported by the evidence, any error with respect to a contract theory of recovery for consequential damages must be deemed harmless.

We have examined the record carefully, and while we agree that a verdict in favor of the Politos would have been proper, we cannot hold that the trial judge abused his discretion in refusing to set a contrary verdict aside. Thus we conclude that the jury's verdict precludes an award of consequential damages.

## IV.

The court also refused to charge the jury on the separate tort of intentional infliction of emotional distress. That tort has been recognized in some jurisdictions as a distinct ground for recovery in direct actions against insurers. *See, e.g., Eckenrode ·v. Life of America Insurance Co.,* 470 F.2d 1, 4 (7th Cir. 1972); *Fletcher v. Western National Life Insurance Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 79 (1970); Note, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend,* 45 Fordham L.Rev. 164, 174 (1976).

■ New Jersey only recently recognized an independent cause of action for intentional infliction of emotional distress. *Hume v. Bayer,* 178 N.J.Super. 310, 314, 428 A.2d 966, 968 (Law Div. 1981). Prior to *Hume v. Bayer,* New Jersey drew a distinction between a separate cause of action for the tort and recovery for the harm as an element of damages in an action on another underlying tort. *Compare Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521 (1980) (emotional distress as an element of damages in either negligence or intentional tort actions); *Berman v. Allan,* 80 N.J. 421, 404 A.2d 8 (1979) (same); *Muniz v. United Hospitals Medical Center Presbyterian Hospital,* 153 N.J.Super. 79, 379 A.2d 57 (App.Div.1977) (same) *with Schwartz v. United Jersey Bank,* 497 F.Supp. 335, 337 (D.N.J.1980) (no separate cause of action under New Jersey law); *Hafner v. Hafner,* 135 N.J.Super. 328, 334, 343 A.2d 166, 169 (Law Div. 1975) (same).

Since publication of the decision in *Hume v. Bayer,* a prediction that the New Jersey courts would recognize that insurance companies may be liable for the intentional infliction of emotional distress seems reasonable. Moreover, even before that decision, emotional distress could be relied upon as an element of damages for another tort. *Hume v. Bayer* suggests, however, that New Jersey follows the Restatement standard that recovery is conditioned on a showing that the conduct causing emotional distress is "so extreme and outrageous 'as to go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community.'" *Hafner v. Hafner,* 135 N.J.Super. at 333–34, 343 A.2d at 169 (quoting Restatement of Torts [Second], § 46, Comment d). The Politos do not suggest that they were prepared to offer evidence of misconduct by Continental other than that in the present record. Since the jury found no breach of the duty of good faith, the Politos could hardly have prevailed on a cause of action for intentional infliction of emotional distress under the Restatement standard. Error, if any, in the district court's refusal to submit the Politos' separate tort claim to the jury must therefore be regarded as harmless. The verdict in favor of Continental precludes an award of damages for emotional distress.

## V.

■ The New Jersey Court rule on attorneys fees provides that no fees shall be allowed, except

(6) in an action upon a liability or indemnity policy, in favor of a successful claimant.

N.J.Ct.R. 4:42–9(a)(6). In *Miller v. New Jersey Underwriting Association,* 177 N.J. Super. 584, 427 A.2d 135 (Law Div. 1981), the court, interpreting this rule, rejected the contentions that a fire policy is not a liability or indemnity policy within the meaning of the rule, and that the rule was only intended to apply to cases where the insured seeks coverage for third party claims. Judge Yanoff explained:

> The intent of the rule would seem to be that a carrier should not be permitted to make use of money which is properly due to an insured while litigating the question of payment. The possibility of award of counsel fees, in addition to pre-judgment interest, serves as an additional incentive to discourage unsound denials of liability.

177 N.J.Super. at 590, 427 A.2d at 139.

Although the Politos did not ultimately prevail in obtaining a verdict from the jury, they are entitled to fees nonetheless. In *Van Houten v. New Jersey Manufacturers Insurance Co.,* 170 N.J.Super. 415, 406 A.2d 984 (App.Div.1979), the trial court allowed a counsel fee to plaintiff following a settlement of a claim for personal injury. The Appellate Division affirmed the award of fees to the plaintiff:

> It is difficult to understand how there could be a "successful claimant" in an action which has been disposed of by compromise since such compromise could, and probably should, have considered and concluded any question of a counsel fee.
>
> The one fact that does not appear clearly in the trial court's opinion is that on the day of trial plaintiff was prepared to try the case but was dissuaded by the judge because plaintiff was receiving everything that he could have gotten at the trial. . . . Had the plaintiff proceeded to trial and had there been a finding, as there would have been, for the amount of the settlement, there is no doubt the judge could have awarded a counsel fee.
>
> For the purpose of determining the applicability of R. 4:42–9(a)(6) to the situation before the court, the settlement can be analogized to a judgment.

170 N.J.Super. at 417–18, 406 A.2d at 985–86. Even though the Politos were ultimately unsuccessful on several of their claims, at a minimum they should be allowed fees for the portion of legal services necessary to secure the payment of policy benefits. Continental did not pay any amount to the Politos until April 15, 1981, when the magistrate entered the Consent Order requiring it to pay the appraised amount of the building loss. As in *Van Houten,* had the Politos proceeded to trial to secure the policy benefits, there would have been a judgment in their favor and they would have been entitled to fees. There is no question but their lawsuit was what brought about payment of their claims. On remand, the district court should determine the amount of an award to the Politos of counsel fees, including a reasonable fee for taking an appeal on the fee issue. *See Maros v. Transamerica Insurance Co.,* 76 N.J. 572, 579, 388 A.2d 971, 974 (1978); *Corcoran v. Hartford Fire Insurance Co.,* 132 N.J.Super. 234, 244–45, 333 A.2d 293, 299 (App.Div.1975).

## VI.

The order denying a motion for a new trial will be reversed and the case remanded for a new trial on the Politos' breach of contract claim for pre-judgment interest. The order denying their motion for an award of counsel fees pursuant to N.J.Ct.R. 4:42–9(a)(6) will be reversed and the case remanded for the determination by the trial court of an appropriate fee. In all other respects the judgment appealed from will be affirmed. Each party shall bear its own costs.