NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2539
_____

ALFRED DEGENNARO,
                    Appellant

v.

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA;
GOVERNMENT EMPLOYEES INSURANCE COMPANY;
ASSURANT SPECIALTY PROPERTY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-16-cv-05274)
District Judge: Honorable Brian R. Martinotti,
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 10, 2018

Before:  CHAGARES, VANASKIE and FISHER, *Circuit Judges.*

(Filed: June 8, 2018)
_____

OPINION[*]
_____

---

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FISHER, *Circuit Judge*.

Alfred DeGennaro, a member of the New Jersey bar proceeding *pro se*, appeals from the District Court's dismissal of his complaint alleging various statutory, contract, and tort claims against Defendants Government Employees Insurance Company ("GEICO"), Assurant Specialty Property, and American Bankers Insurance Company of Florida ("ABIC"). For the reasons that follow, we will affirm.

I.

In late 2013, DeGennaro contacted GEICO, his auto insurance carrier, seeking to obtain a $1 million umbrella liability policy. GEICO informed DeGennaro that he first needed to secure a renter's insurance policy for his home with a minimum personal liability coverage limit of $300,000 per occurrence. DeGennaro then sought and obtained such a renter's policy—issued by ABIC[1]—with $300,000 of personal liability coverage per occurrence, which allowed him to obtain the umbrella policy through GEICO.

DeGennaro later received a letter from GEICO about his umbrella policy, stating that he "may not meet the required underlying liability limit of $300,000," and that he should review his policy to ensure he was "carrying the adequate limit" to avoid a "gap of coverage."[2] At the time, the declaration page accompanying DeGennaro's renter's policy with ABIC listed his personal liability coverage limit as $300,000 per occurrence. Less

---

[1] ABIC is a wholly-owned subsidiary of Interfinancial, Inc., which is a wholly-owned subsidiary of defendant Assurant, Inc.

[2] Joint Appendix ("J.A.") 389, 39–40.

than a month later, however, DeGennaro received an amended declaration page from ABIC stating that his personal liability coverage limit had been reduced to $100,000 per occurrence. This was because DeGennaro was operating a business—his law practice—at his residence, which disqualified him from a $300,000 liability coverage limit under ABIC's then-existing underwriting guidelines. DeGennaro acknowledges receiving this amended declaration, which stated in bold lettering that it superseded the previous declaration page. To account for the reduction in coverage, DeGennaro's annual insurance premiums were correspondingly lowered from $24 to $8, and his credit card was refunded $16.

DeGennaro renewed his one-year renter's policy with ABIC on two occasions— each time the renewal declaration pages listed his personal liability coverage limit as only $100,000 per occurrence. On the second renewal, he noticed the potential issue and reached out to GEICO. He learned that he had a $200,000 gap in coverage because his personal liability limit was $100,000 rather than $300,000. DeGennaro then reached out to ABIC and was notified that his policy had been reduced because he was operating a business on the premises. Because ABIC's underwriting policies had since changed, however, ABIC agreed to increase his liability limit $300,000 and charge him a new premium of $16.78 per year.

Not satisfied with this result, DeGennaro filed a consumer complaint with the New Jersey Department of Banking and Insurance ("NJDOBI") "to address the reduction of

3

his comprehensive personal liability coverage from $300,000 to $100,000."[3] ABIC sent a letter to NJDOBI explaining that DeGennaro had initially been approved for a $300,000 policy because of a "system issue,"[4] but that his policy was reduced during the underwriting period because, under their guidelines at the time, he was ineligible for the $300,000 limit. The letter also noted that ABIC notified DeGennaro via email about the reduction in coverage, that they refunded $16 to his credit card on file, and that if DeGennaro wished, they would "honor [a] request to increase the liability coverage to $300,000, back to the inception date of the policy," which would result in a corresponding increase in his premiums.[5] Because ABIC made that offer, NJDOBI determined that the "matter has been favorably resolved,"[6] and it closed the matter.

Instead of paying the increased premium to have his renter's liability coverage increased retroactive to the inception date of the policy, DeGennaro cancelled his ABIC renter's insurance policy and his GEICO auto and umbrella policies. And although DeGennaro never made a claim under these policies while they were in effect, he filed a complaint in the District Court alleging various statutory, contract, and tort claims against Defendants, seeking $172.8 million in damages. DeGennaro's claims allege, *inter alia*, that the Defendants conspired to harm him by intentionally and deceitfully decreasing the limit on his policy, thereby causing him harm by forcing him to unknowingly carry

---

[3] J.A. 47.
[4] J.A. 193.
[5] J.A. 194.
[6] J.A. 149.

4

additional risk due to the resulting gap in coverage. The Defendants each filed motions to dismiss the complaint under Rule 12(b)(6), which the District Court granted. DeGennaro appealed.

II.

The District Court had jurisdiction under 28 U.S.C. § 1332, and it dismissed DeGennaro's complaint without prejudice. Although such an order is generally "neither final nor appealable," it becomes so when the plaintiff "declares his intention to stand on his complaint." [7] Because DeGennaro opts to stand on his complaint, we have appellate jurisdiction under 28 U.S.C. § 1291.

"[O]ur standard of review of a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) is plenary."[8] "We 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"[9] DeGennaro's claims alleging fraud, including his claims under New Jersey's Consumer Fraud Act (the "CFA"), N.J.S.A. § 56:8–1 et seq., are subject to the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b).[10] This requires a plaintiff to

---

[7] *Borelli v. City of Reading*, 532 F.2d 950, 951–52 (3d Cir. 1976).

[8] *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).

[9] *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010) (quoting *Grammer v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 523 (3d Cir. 2009)).

[10] *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 202–03 (3d Cir. 2007) (applying Rule 9(b) standard to CFA claims).

"state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'"[11]

### III.

DeGennaro alleges: (A) nine counts under the CFA; (B) a tortious interference with prospective economic advantage claim; (C) a common law fraud claim; (D) a breach of fiduciary duty claim; and (E) two breach of contract claims. We address these in turn.

### A.

DeGennaro alleges nine counts under the CFA, which imposes liability on any person who uses: "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission."[12] To state a claim under the CFA, a plaintiff needs to allege: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."[13] The District Court held that DeGennaro failed to sufficiently plead these elements. We concur. Even

---

[11] *Id.* at 200 (alteration in original) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)).

[12] N.J.S.A. § 56:8-2.

[13] *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009).

assuming any of Defendants' conduct was "unlawful,"[14] DeGennaro's claims still fail because he fails to sufficiently plead an "ascertainable loss," which he frames as the loss associated with carrying additional risk.

The Supreme Court of New Jersey has stated that, in the CFA context, an ascertainable loss is "a definite, certain and measurable loss, rather than one that is merely theoretical."[15] An ascertainable loss "need not yet have been experienced as an out-of-pocket loss to the plaintiff," but it cannot be "hypothetical or illusory"—"[t]he certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable."[16]

DeGennaro admits that his theory of loss—having to carry the "risk" associated with the gap in his coverage—"is a damage of an incorporeal nature."[17] DeGennaro has not suffered any out-of-pocket costs, because he never made a claim under his policy, he never had to cover the gap in his coverage, and the $16 additional premium was returned

---

[14] DeGennaro fails to plead unlawful conduct because, *inter alia*, Defendants clearly put him on notice of the policy change through the initial revised declaration sheet, an email, accurate declaration sheets at renewal time, and even two notices indicating a possible coverage gap. Simply put, he fails to adequately plead any "affirmative act[], knowing omission[], [or] regulatory violation[]" as required under the CFA. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

[15] *Bosland*, 964 A.2d at 749 (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005)).

[16] *Thiedemann*, 872 A.2d at 792–93; *see also Cox*, 647 A.2d at 464 (finding an "ascertainable loss" where contractor incorrectly renovated plaintiff's kitchen, even though plaintiff had not yet paid contractor, because the damage could be "calculated within a reasonable degree of certainty").

[17] DeGennaro Br. 5.

to his account. Nonetheless, DeGennaro suggests that his "loss" is ascertainable under the "benefit-of-the-bargain" theory, which "allows recovery for the difference between the price paid and the value . . . had the representations been true."[18] Under this theory, however, DeGennaro must still allege that "the difference in value between the product promised and the one received can be reasonably quantified," and the "[f]ailure to quantify this difference in value results in the dismissal of a claim."[19]

Even accepting DeGennaro's argument that he expected a $300,000 renter's policy, but wound up with a "$200,000 nightmare,"[20] he fails to quantify the difference in value associated with carrying additional risk. For example, he suggests that he "unknowingly carr[ied] the risk," which "would cause conservatively at least $400,000 [of loss] to the reasonable consumer," but also that a "jury should determine a value" associated with this loss.[21] DeGennaro also makes public policy arguments and presents hypothetical scenarios suggesting that although the "exposure to perilous circumstances is gone," the exposure to risk had a "real value" to him.[22] These convoluted arguments come nowhere close to pleading an ascertainable loss under Rule 9(b)'s stringent pleading standard.

---

[18] *Correa v. Maggiore*, 482 A.2d 192, 197 (N.J. Super. Ct. App. Div. 1984).
[19] *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99, 101 (D.N.J. 2011).
[20] DeGennaro Br. 43.
[21] DeGennaro Br. 42.
[22] DeGennaro Br. 30.

Additionally, ascertainable loss is not adequately pled for another reason. Courts adjudicating CFA claims have dismissed complaints for lack of ascertainable loss where a "defendant . . . takes action to ensure that the plaintiff sustains no out-of-pocket loss or loss of value prior to litigation."[23] Here, ABIC offered to increase DeGennaro's coverage limit—prior to any litigation—retroactive to the inception date of the policy.[24]

Lastly, DeGennaro makes a new CFA argument on appeal. Before the District Court, DeGennaro had also alleged that Defendants were strictly liable under the CFA for violating New Jersey Administrative Code § 11:1-20.2, which governs renewal, cancellation, and non-renewal of insurance policies. The District Court correctly noted that this section was inapplicable because ABIC never cancelled nor failed to renew the renter's policy. For the first time on appeal, DeGennaro alleges that the Defendants violated a different section, N.J.A.C. § 11:1-22.2(a)(1), which prohibits a mid-term decrease in coverage without approval from the Commissioner. He acknowledges that he never cited this statute in his complaint, but he "feels [his] allegations . . . were sufficient." DeGennaro Br. 2. DeGennaro is incorrect. *Spireas v. Comm'r of Internal Revenue*, 886 F.3d 315, 321 (3d Cir. 2018) ("Whether an argument remains fair game on appeal is determined by the 'degree of particularity' with which it was raised in the trial

---

[23] *See D'Agostino v. Maldonado*, 78 A.3d 527, 543 (N.J. 2013).

[24] ABIC's willingness to increase the coverage limit retroactively is relevant because the policy was an "occurrence-based" policy. Under such a policy, a policyholder can make a claim after the policy period ends, provided the "occurrence" occurred during the policy period.

court, and parties must do so with 'exacting specificity,'" including by relying on "the same legal rule or standard.") (quoting *United States v. Joseph*, 730 F.3d 336, 339–42 (3d Cir. 2018)).[25] Accordingly, for all the reasons discussed, we affirm the dismissal of the CFA counts

B.

Count Eight alleges tortious interference with prospective advantage based on DeGennaro's allegation that Defendants' actions resulted in him "not exercis[ing] his right to purchase suitable insurance policies . . . from other companies."[26] He argues that his claim is supported by the fact that he was later able to purchase a suitable policy from another insurance company after cancelling his policies with ABIC and GEICO. His claim fails for several reasons.

To state a claim for tortious interference with prospective advantage under New Jersey law, DeGennaro must allege:

(1) [his] reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have

---

[25] Aside from the waiver, "[n]othing" in the statute "shall be deemed to create any right or cause of action on behalf of any insured . . . ." N.J.A.C. § 11:1-22.5(b)(2)). And even if the claims were somehow cognizable, it is doubtful there would be any statutory violation because DeGennaro assented to the coverage reduction by accepting the updated policy and renewing it (twice). *See NN&R, Inc. v. One Beacon Ins. Grp.*, No. CIV. 03-5011 (JBS), 2006 WL 1765077, at *6 (D.N.J. June 26, 2006) (no violation where insured was on notice of policy change and acceded to it).

[26] J.A. 89–90.

10

received the anticipated economic benefit, and (5) damages resulting from the defendant's interference.[27]

A complaint must not only "demonstrate that a plaintiff was in 'pursuit' of business," but must also "allege facts claiming that the interference was done intentionally and with 'malice.'"[28] Here, DeGennaro does not allege what economic benefit he lost as a result of Defendants' alleged actions, nor any facts suggesting that any alleged actions were done intentionally or with malice. Moreover, as discussed *supra*, he has failed to properly allege any damages whatsoever—let alone damages resulting from the alleged "interference." The fact that DeGennaro later purchased insurance from another company that met his expectations (which ABIC also agreed to provide) does not rescue his claim.

## C.

Count Nine alleges common law fraud against Defendants for the "fraudulent" sale of insurance, and for "surreptitiously, purposely, knowingly, deceitfully, and maliciously creating a $200,000 gap in liability coverage."[29] He suggests, on appeal, that he relied on the initial declaration page noting a $300,000 limit, which caused him to end his search for insurance coverage. "To state a claim for fraud under New Jersey law, [DeGennaro] must allege (1) a material misrepresentation of fact; (2) knowledge or belief

---

[27] *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir. 1992) (citing *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989)). This Court has noted other formulations of how to prevail on such a claim. *See Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016) (parsing out a three-part test). DeGennaro's claim fails regardless of which formulation we apply.
[28] *Printing Mart–Morristown*, 563 A.2d at 37.
[29] J.A. 91–92.

by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage."[30] DeGennaro's complaint contains no specific facts supporting his bare allegations of fraud. DeGennaro also admits that he received a revised declaration page indicating that his limit had been reduced. Not only was he notified when the policy was changed, but this information was sent to him repeatedly when the policy was up for renewal. GEICO also repeatedly informed him of the potential gap in his coverage. DeGennaro pleads no facts suggesting that Defendants knew any statements were false, and as discussed *supra*, he suffered no damage or loss. This fraud claim—which is subject to Rule 9(b)'s stringent pleading standard—would not survive a Motion to Dismiss even under the normal pleading standard.

D.

Count Ten alleges "intentional" breach of contract. Before the District Court, however, DeGennaro conceded that no separate action exists under New Jersey law for "intentional" breach of contract. Accordingly, the District Court dismissed the claim. On appeal, DeGennaro suggests that this count should actually be styled "Breach of Good

---

[30] *Frederico*, 507 F.3d at 200.

Faith in Contract," and this this Court should "clerically correct[]" his mistake.[31] We decline to do so.[32]

Count Twelve alleges breach of contract on the basis that the Defendants created a gap in DeGennaro's liability coverage, which rendered the policies "deficient and unsuitable" and caused him to "unknowingly carry" the risk associated with the coverage gap.[33] "To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages."[34] Like DeGennaro's other claims, this one fails because of his inability to plead damages. Moreover, the typical remedy in a breach of contract action is compensatory damages, which "put the innocent party into the position he or she would have achieved had the contract been completed."[35] Thus, even assuming ABIC breached the insurance contract, it offered to

---

[31] DeGennaro Br. 39.

[32] DeGennaro never sought to amend his complaint to assert this claim. Moreover, assuming this claim is for breach of the implied covenant of good faith and fair dealing, he has failed to plead sufficient facts to support such a claim.

[33] J.A. 95–96.

[34] *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)).

[35] *Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.*, 921 A.2d 1100, 1107 (N.J. 2007).

increase DeGennaro's coverage limit retroactive to the inception of the contract—thereby putting him in "as good a position as . . . if performance had been rendered."[36]

E.

Count Eleven alleges that Defendants owed DeGennaro a "fiduciary duty because they were insuring him," which they breached by "surreptitiously, purposely, knowingly, deceitfully, and maliciously creating a $200,000 gap in liability coverage."[37] An insurer only owes a fiduciary duty to an insured under "certain circumstances," such as when it is settling claims on behalf of the insured.[38] None of these circumstances are present here. Indeed, the complaint alleges the fiduciary duty is based on the fact that Defendants were insuring DeGennaro—and nothing more. No claim was ever made on the insurance policy, and thus Defendants never settled any claims on his behalf. DeGennaro does not even address these shortcomings on appeal, merely declaring that by dismissing this count we would be taking an "extremely technical view of a fiduciary relationship."[39] But it is no mere technicality to observe that DeGennaro has failed to plead anything to suggest a fiduciary duty exists, let alone that Defendants breached such a duty.

---

[36] *Id.* at 1108 (quoting *Donovan v. Bachstadt*, 453 A.2d 160, 165 (N.J. 1982). DeGennaro's brief largely focuses on irrelevant theories of third-party contractual liability, presumably to suggest that GEICO can be held liable as a third-party beneficiary of the renter's policy that DeGennaro purchased from ABIC. GEICO, however, is not a third-party beneficiary of that policy, but even if it was, it cannot be held liable because there was no breach of contract for the reasons discussed in this section.

[37] J.A. 94–95.

[38] *Polito v. Cont'l Cas. Co.*, 689 F.2d 457, 462 (3d Cir. 1982) (*abrogated on other grounds by Carfagno v. Aetna Cas. & Sur. Co.*, 770 F. Supp. 245 (D.N.J. 1991)).

[39] DeGennaro Br. 41.

14

## IV.

For the foregoing reasons, we will affirm.