108 N.J. Super. 544 (1970)
262 A.2d 11
HAROLD KAMENS, PLAINTIFF,
v.
ALFRED FORTUGNO ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 30, 1970.
*546 Mr. Charles H. Hoens, Jr. appeared for plaintiff (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. Clive Cummis appeared for defendants Alfred Fortugno, Anna F. Camp, Adeline Fortugno, Connie Ruble, individually and as executrix, and Fortugno Realty Company (Messrs Cummis, Kent & Radin, attorneys).
Messrs. Crummy, Gibbons & O'Neill, attorneys for defendant Connie Fortugno, individually and as executrix.
Messrs. Warren, Chasan, Leyner and Holland, attorneys for defendant Anthony Fortugno, individually.
LYNCH, J.S.C.
This case, in which plaintiff sues for legal fees, is before the court after remand from the Appellate Division pursuant to its opinion dated June 20, 1969. Therein the court reversed the trial judge's decision which had held that a written agreement, dated June 14, 1957, with reference to fees for services to be rendered in the United States Tax Court was unenforceable because made under duress. The trial court relegated plaintiff's right to recover *547 fees for such services[1] to a letter agreement of September 22, 1954 under which that court found that there was owing to plaintiff $6,000 and judgment was entered in his favor in that amount. In reversing, the Appellate Division directed that fees calculated pursuant to the 1957 agreement be awarded to plaintiff. Such calculation thereunder produces a fee owing to plaintiff in the amount of $72,200[2]. There remains the question herein considered as to whether interest will be allowed on that sum and, if so, from what date interest will run.
The agreements concern legal services to be rendered by plaintiff in the United States Tax Court with reference to federal tax difficulties confronting defendants and involving the tax years 1940 to 1952. Defendants had deposited $1,000,000 in cash with the I.R.S. to be applied toward any taxes and penalties which might subsequently have been found to be owing, and to be refunded to defendants to the extent not so applied. Eventually all claims by I.R.S. were settled on October 2, 1962, for the sum of $214,000. The balance of the $1,000,000 deposit  $786,000  was refunded to defendants *548 on July 30, 1965. Thereafter interest in the amount of $425,000 was later paid to defendants.
The principal dispute between the parties on remand here involves the question as to whether plaintiff shall recover interest on the principal of $72,200 now found to be due under the 1957 agreement and, if so, the period of time for which interest shall be allowed.
Defendants' basic argument against allowance of interest is that it does not follow as a matter of law. They argue that it should not be allowed where there is a "bona fide dispute as to the validity of the claim"; that their contest of plaintiff's claim herein was bona fide and reasonable, as evidenced by the judgment of the trial court in finding the 1957 agreement unenforceable, and that the "equities" should preclude an award of interest. Defendants assert that at least until the time of the Appellate Division decision on June 20, 1969, they did not know the amount which was owed to plaintiff, and until the amount legally due was finally ascertained by that decision they should not be considered in default so as to be liable for interest.
Plaintiff contends that his claim is a liquidated one; that it became due at the time the fee was earned, namely, the date of the settlement of the Government's claim on October 2, 1962, and that interest on the principal sum owed should run from that date.
In the case of Stout v. Sutphen, 132 N.J. Eq. 583 (Ch. 1943), Vice-Chancellor Jayne stated the general rule with respect to payment of interest as follows:
Broadly stated, interest has been allowed by the courts of our State either by way of damages for the detention of a fund, or by way of profit earned or advantage attained. In the absence of a definitely controlling precedent, courts of equity are free to decide all questions pertaining to the allowance of interest according to the "plainest and simplest considerations of justice and fair dealing" in the given case [at 590]
It is also true that considerations of "fault" for nonpayment of a debt are indulged to influence the rule with *549 respect to payment of interest. Thus, with respect to unliquidated damages interest is not recoverable except after judgment because the person who is liable for the debt does not know the sum he owes and cannot be in default until the amount he owes is determined by judgment. 47 C.J.S. Interest § 19, at p. 28. In Kearny v. New Jersey Suburban Water Co., 110 N.J. Eq. 214 (Ch. 1932), the municipality had been ordered to pay the water company arrearages for water supplied. The company then sought interest on the arrearages. Vice-Chancellor Backes said:
Interest, however, would not have been warranted unless the complainants were at fault and they would have been in default only if the amount due for water could have been determined by computation based upon established market values or other generally recognized standard.
Holding that there was no measure of value or method to determine the amount due as arrearages, the court denied interest to the water company on the arrearages although allowing reimbursement to the company for interest that it had to pay for money borrowed during the course of the litigation.
While we recognize the foregoing rule with respect to payment of interest on unliquidated claims, it is also true that "Interest is allowed where the damages are readily ascertainable." Bachman Choc. Mfg. Co. v. Lehigh Wrhse. & T. Co., 1 N.J. 239 (1949). This rule likewise invokes considerations of "fault" on the part of the debtor, for the reason that since he knows what is due or could easily ascertain the amount, he could have stopped the running of interest by tendering payment thereof. 47 C.J.S. Interest § 19(b), at p. 30.
Defendants argue that "where either the amount in dispute is unliquidated or there is a bona fide dispute as to the validity of a claim the courts need not, and generally will not, allow interest." (Emphasis defendants'). In support thereof they cite the cases of Jardine Estates v. Donna Brook Corp., 42 N.J. Super. 332 (App. Div. 1956); Deerhurst Estates v. *550 Meadow Homes, Inc., 64 N.J. Super. 134, 155 (App Div. 1960), certif. den. 34 N.J. 66 (1961); Southern Painting Co. of Tenn. v. United States, 222 F.2d 431, 435 (10 Cir.1955); Watson Lumber Co. v. Guennewig, 79 Ill. App.2d 377, 226 N.E.2d 270 (Ct. App. 1967); Mid-South Engineering Co. v. Buchanan, 440 S.W.2d 600, 610 (Tenn. Ct. App. 1967); Hunter v. Wilson, 147 Colo. 36, 362 P.2d 553 (Sup. Ct. 1961); Baker County v. Huntington, 48 Or. 593, 89 P. 144 (Sup. Ct. 1907).
An examination of the cases cited by defendants indicates that all of them involve unliquidated damages or cases where, for other reasons, the debtor was unable to determine the amount actually owed until after judgment. In every instance the amount due was in dispute.
But defendants argue in this case that they "did not know" the amount owed to plaintiff until after the determination by the decision of the Appellate Division in sustaining the 1957 agreement and the subsequent denial of certification by the Supreme Court. Rhetorically, they ask how they could "know" that $72,200 was due to plaintiff until after that decision, especially since up to that time the judgment of the trial court had denied that damages were owing to plaintiff under the 1957 agreement and had allowed damages in the amount of only $6,000 pursuant to the 1954 agreement. The argument is specious. Defendants are charged with knowledge of the only obligation which the courts have now finally imposed upon them, namely, the 1957 agreement, even though the prior trial court's judgment, now abortive, would have lifted that obligation from them. The decision of the Appellate Division established that the defendants were liable under the 1957 agreement. The trial court's judgment now has no meaning. However much we may respect it and its reasoning, it is now held to have been in error and serves as no monument to determine what was owing by defendants to plaintiff.
A judgment in favor of a debtor, if later reversed, does not toll the running of interest on a liquidated claim *551 from the time it became due. Small v. Schuncke, 42 N.J. 407 (1964). That case involved a dispute between two insurance companies, Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company (Pennsylvania) and Liberty Mutual Insurance Company (Liberty), as to coverage for liability arising out of an automobile accident. After several days of trial of the negligence suit the two companies agreed that the case should be settled by payment to the claimant of $20,000, leaving for future disposition the question of coverage as between the companies. Pursuant to this arrangement Liberty paid the $20,000 on December 16, 1958 and the suit to determine coverages between the companies proceeded. On February 27, 1962 the Superior Court, Law Division, granted judgment holding Pennsylvania liable for coverage and ordering it to pay to Liberty $20,000 plus 6% interest from December 16, 1958, with costs. On July 18, 1963 the Appellate Division reversed, holding that neither Liberty nor Pennsylvania was liable for coverage. On June 1, 1964 the Supreme Court reversed the Appellate Division, reinstated the trial court's judgment holding Pennsylvania liable to Liberty for the $20,000, and allowed Liberty interest from the date it made the payment of December 16, 1958.
It will be seen that in Small, during the period from July 18, 1963 (when the Appellate Division held Pennsylvania not liable) to June 1, 1964 (when the Supreme Court reversed), Pennsylvania was under the umbrella of a favorable decision, just as defendants were here from the date of the trial judge's opinion of March 1, 1968 to the date of reversal by the Appellate Division on June 19, 1969. Nevertheless, the Supreme Court in Small reinstated the running of interest to the original date set by the trial court and continued the running thereof through all the period when, after reversal by the Appellate Division, there appeared to be no liability on the part of Pennsylvania. The period of apparent triumph on the part of Pennsylvania after that reversal did not suspend the running of interest for that period of time, nor did the *552 reversal by the Appellate Division endow Pennsylvania's contest of Liberty's claim with the virtue of a "bona fide dispute" so as to excuse it from payment of interest during that period. In Small the Supreme Court said:
"Interest is in contemplation of law damages for the illegal detention of a legitimate claim or indebtedness. Fidelity Mut. Life Ins. Co. v. Wilkes-Barre, etc., Co., 98 N.J.L. 507, 510 (E. & A. 1923). And in practice a court should charge and allow interest in accordance with principles of equity in order to accomplish justice in each particular case. Jardine Estates, Inc. v. Donna Brook Corp., 42 N.J. Super. 332, 340 (App. Div. 1956). The amount of the settlement paid by Liberty is concededly fair and reasonable, and in accordance with our holding, Pennsylvania was obligated to pay it on December 16, 1958. Liberty has been deprived of the use of this liquidated amount since that time, and Pennsylvania, on the other hand, has had the use of it. Moreover, Liberty has been put to the expense and inconvenience of defending Schuncke and litigating this action to establish Pennsylvania's liability under its policy. We find no error in the trial court's allowance of interest. See United Deliveries, Inc. v. Norwich, etc., Ltd., 133 N.J.L. 393 (E. & A. 1945).
The judgment of the Appellate Division is reversed, and the judgment of the trial court is reinstated. [42 N.J., at 415, 416; emphasis added]
See also, Fassbinder v. Pennsylvania R.R. Co., 233 F. Supp. 574 (W.D. Pa. 1964).
So here, "in accordance with" the holding of the Appellate Division, plaintiff is owed fees in the amount of $72,200, calculated under the 1957 agreement. Interest is to be allowed on that sum to the same extent as though the trial court's decision voiding said agreement had never been rendered.
Defendants further urge that because of the trial judge's decision in their favor, it must be recognized that there was reasonable grounds for their contest of plaintiff's claim under the 1957 agreement, and their disputing of the claim was in good faith and should toll the payment of interest. But interest on a claim, the amount of which is certain, is not avoided by disputation in good faith over legal *553 liability. Restatement, Contracts, § 337 (d), at 544. A party's mistaken legal view that he had a valid defense to a claim does not toll the obligation to pay interest from the date that claim is found to be due. Jos. L. Muscarelle, Inc. v. Central Iron Mfg. Co., 379 F.2d 715, 719 (3 Cir.1967). See also, Union Deliveries, Inc. v. Norwich, Ltd., 133 N.J.L. 393 (E. & A. 1945). Nor does a mistaken view of the law toll a normal obligation to pay interest from the due date. Thus, in Morton v. Godfrey L. Cabot, Inc., 134 W. Va. 55, 63 S.E.2d 861 (Sup. Ct. App. 1949), defendant withheld payments which it had the right to do under an apparently valid statute. That statute was later held unconstitutional and plaintiff sought recovery of the payments with interest. Defendant contended it was not liable for the interest because it acted in good faith in withholding the payments in accordance with the statute. It was held that even though defendant acted in good faith pursuant to the statute, it nevertheless owed interest to the plaintiff from the due dates until paid. So here, even though it may be said that defendants disputed plaintiff's claim in good faith, interest is nevertheless due on the debt now found to be due.
There remains the question as to the date at which interest shall begin to run. Plaintiff argues that since the settlement with I.R.S. occurred on October 2, 1962, that was the date when he earned his fee under the 1957 agreement and interest should run from that date.
Interest is payable on a liquidated obligation from the due date. Mahoney v. Minsky, 39 N.J. 208 (1963); Restatement, Contracts, § 337, at 542; 47 C.J.S. Interest § 26, at p. 38. But any determination in the awarding of interest is subject to the overriding consideration that it should be allowed in accordance with principles of equity in order to accomplish justice in each particular case. Small v. Schuncke, supra, at 414, 415. Since interest is awarded as either damages for detention of a fund or by way of profit earned or advantage attained (ibid.), the equities demand consideration of the period of time defendants *554 withheld the payment of the debt from plaintiff after they received the avails of his services.
It may be said that in the contractual sense plaintiff actually earned his fee at the date of the settlement in the Tax Court, namely, October 2, 1962. But it was not until July 30, 1965 that defendants gained the avails of that settlement, namely, the refunding to them of $786,000, the balance remaining of their $1,000,000 deposit with I.R.S. after deducting the amount of the settlement in the sum of $214,000. Thus, from October 2, 1962 to July 30, 1965 defendants earned no profit and gained no advantage from the settlement agreement. Since that was so, it would be inequitable to assess interest as damages for detention of plaintiff's fee. However, from the time they received their refund of the principal balance remaining after deduction of the settlement figure, namely, on July 30, 1965, defendants had the use of the money and presumably earned such interest, dividends or other benefits therefrom as were available. Likewise, from that date plaintiff was deprived of the use of the money which he had earned by the settlement agreement. Therefore, a judgment will be entered awarding interest at 6% on the sum of $72,200 from July 30, 1965.
Defendants also seek a credit against the amount due to plaintiff represented by that paragraph of the trial court's judgment which awarded to plaintiff the sum of $7,500 for services performed in the United States Tax Court in seeking to recover interest on so much of the $1,000,000 deposit as exceeded the settlement figure of $214,000. Defendants argue that such credit should be allowed to them because, in their view, the services rendered came within the terms of the June 14, 1957 agreement.
However, the trial judge expressly held that the services for which he awarded the $7,500 were not covered by the June 14, 1957 agreement. Indeed, since he held the latter void and unenforceable, he would not have awarded judgment to plaintiff for the services represented by the $7,500. In any event, defendants did not file a cross-appeal *555 from the judgment for $7,500. To allow a credit now for that amount would nullify the judgment which stands unassailed. Accordingly, defendants' prayer to obtain credit for said sum is not properly before the court and therefore is denied. Liberty Title & Trust Co. v. Plews, 6 N.J. 28 (1950).
As to the form of the judgment, I have provided that the judgment entered herein shall not affect the third, fourth or fifth ordering paragraphs of the trial court's judgment of July 8, 1968, which were not involved in the appeal to the Appellate Division. Thus, those paragraphs wherein damages were awarded to plaintiff respectively in the amounts of $7,500 (without interest), $1,500 (with interest from February 1, 1965) and $13,066.31 (with interest from December 1, 1966) remain in full force and effect. I have also provided that the judgment in favor of plaintiff here entered in the sum of $72,200 plus interest from July 30, 1965 shall be paid by defendants Alfred Fortugno, Anne F. Camp, Adeline Fortugno, Mollie Fortugno and Anthony Fortugno, individually, Connie Ruble, individually, Connie Fortugno, individually, and as executrix of the estate of Daniel Fortugno, deceased, and Anthony Fortugno and Connie Ruble, as executors of the estates of Silvia Fortugno, deceased, and Paul Fortugno, deceased, pro rata and not jointly, together with costs of suit to be taxed. Since defendant Fortugno Realty Company was not a signatory to the 1957 agreement, there will be a dismissal as to that defendant.
NOTES
[1] By this is meant services in the Tax Court in contesting the claims of the Internal Revenue Service (hereafter I.R.S.) against defendants for deficiencies, interest and penalties, as distinguished from other services related to recovery by defendants of interest on money held on deposit by I.R.S. as security for payment of such deficiencies, etc. See infra.
[2] The 1957 agreement which was sustained by the Appellate Division provided a sliding scale by which fees due to plaintiff were to be determined. The fee to be paid in the event of settlement with I.R.S. depended upon the amount of the settlement. Applying the scale to the settlement agreed upon in the amount of $214,000, plaintiff is entitled to the total fee of $72,200 calculated as follows:

 Settlement Fee
 At $500,000 Plaintiff would be entitled to:
 $20,000 (par. 2 of agreement)
 At a sum between 15,000 (par. 3 of agreement)
 $400,000 and $500,000
 At $214,000 (20% of savings 37,200 (par. 4 of agreement)
 below $400,000, i.e., $186,000) ________
 Total fee $72,200