190 N.J. Super. 573 (1983)
464 A.2d 1180
WILLIAM A. FASOLO, APPELLANT,
v.
BOARD OF TRUSTEES OF DIVISION OF PENSIONS OF NEW JERSEY TREASURY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted June 14, 1983.
Decided August 1, 1983.
*575 Before Judges MATTHEWS, ANTELL and FRANCIS.
Fasolo, Krause & Dexter, for appellant (William A. Fasolo and Bruce H. Dexter on the briefs).
Irwin I. Kimmelman, Attorney General of New Jersey, for respondent (Deborah T. Poritz, Deputy Attorney General, of counsel; William P. Malloy, Deputy Attorney General, on the brief).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
In 1981 this court found that PERS had required Fasolo to overpay certain contributions into the PERS fund and that PERS had also underpaid Fasolo for pension payments due to him. The matter was remanded to PERS for computation of the appropriate pension and for adjustments in his contributions. During the period of recalculations Fasolo requested that he be paid the interest that his improperly retained moneys had earned while in the PERS fund. The Board of Trustees refused to pay that interest as well as any postjudgment interest. It is from that determination that Fasolo now appeals. He essentially argues that the equities justify an award of pre and postjudgment interest. Respondent argues that the doctrine of res *576 judicata bars Fasolo from raising the issue of interest in this second appeal and, alternatively, that interest cannot be awarded against a governmental entity in the absence of statute.
On July 2, 1981 we decided Fasolo v. Pensions Div. Trustees, 181 N.J. Super. 434 (App.Div. 1981). In that appeal from a decision of the Board of Trustees of the Public Employees Retirement System (PERS), we addressed the issue of whether certain payments to Fasolo, an attorney of New Jersey, by his public employers, should be considered "compensation" for the purposes of computing his pension payments on retirement. Id. at 436. After deciding which of the specific payments made to Fasolo by certain municipalities would be considered compensation, the court remanded the matter "to PERS for computation of the appropriate pension and for the adjustments in Fasolo's contributions to be made as required by this opinion." Id. at 445.
On October 1, 1981 Fasolo wrote a letter to the Board of Trustees of PERS stating that he had just received a check of over $32,000. He stated that the amount did not appear to be accurate but that he would deposit the check "without prejudice and under protest for the purpose of reserving my right...." Fasolo continued that he particularly reserved his rights to "the interest on all sums withheld from me prior and subsequent to the Superior Court's judgment, or to the income, in lieu of interest, derived from my aforesaid funds retained by your Division in a public trust for the benefit of me."
In its letter of February 4, 1982 to Fasolo, the Board of Trustees denied his request for interest "based upon the fact that there is no provision in N.J.S.A. 43:15A-1 et seq. to pay interest on the refund of moneys other than those so specified when a member withdraws from the retirement system." On March 16, 1982 Fasolo notified the Board of Trustees that he was thereby appealing from the Board's denial of his request for both prejudgment and postjudgment interest.
*577 On July 2, 1982 the Board of Trustees informed Fasolo that it was specifically denying his request for a hearing on the issue of interest on moneys returned. The Board stated that "no substantial facts are in dispute" that would necessitate a hearing and they notified Fasolo of his right to appeal to this court.
It is necessary for the understanding and resolution of this case to review some of the facts from Fasolo's earlier appeal. Between 1951 and 1974 Fasolo was at various times employed by the Boroughs of Demarest and New Milford as borough attorney and additionally by Demarest as sewer attorney. 181 N.J. Super. at 436. Each municipality paid Fasolo as borough attorney a retainer fee. Id. at 438. He additionally received certain "vouchered fees" for work as borough attorney. As sewer attorney he received a salary. Id.
Fasolo first applied for membership in PERS in April 1964. He was admitted on the basis of certain of these positions. Id. at 436-437. The record indicated numerous discussions between PERS and Fasolo before 1975 with respect to which of the moneys he had received from the municipalities would be treated as compensation within N.J.S.A. 43:15A-6 r for the purposes of determining his pension. Id. at 438. As a result of these discussions, in December 1974 PERS advised Fasolo that he owed over $12,000 for contributions on previously unassessed income. It appears that these payments were for the vouchered fees as well as part of his salary as sewer attorney. Fasolo made the payments within three weeks of the request. Id. at 438.
Fasolo reached retirement age in May 1975 and submitted a retirement application in June 1975. In January 1976 his retirement was approved by PERS retroactive to August 1975. Ibid. During that same time PERS requested a formal opinion from the Attorney General as to the status of Fasolo's contributions. The Attorney General advised PERS that the salary as sewer attorney and the voucher fees should not be considered for pension credit. Id. at 439. PERS adopted the Attorney General's *578 opinion and adjusted Fasolo's pensions accordingly. Id. Fasolo did not accept the ruling of PERS and requested a hearing on the matter which resulted in a decision finding his $60,000 salary as sewer attorney was to be considered for pension purposes, but that the vouchered fee should not be considered such compensation. Id. at 439-440. PERS accepted the hearing officer's determination that vouchered fees were excluded and rejected his decision that the sewer attorney's salary should be included. Id. at 440. That decision was rendered in August 1980, five years after Fasolo had retired. He appealed from PERS' decision. Id.
In July 1981 we affirmed PERS' decision with respect to the vouchered fees and reversed with respect to the $60,000 sewer attorney fee. Id. at 444-445. Thus, the vouchered fees were excluded from, and the sewer attorney salary was included in the basis for pension computation. We remanded the matter to PERS for computation of the appropriate pension and account corrections. Id. at 445.
The following facts are extracted from a series of letters written by Fasolo and various members of the Division of Pensions included in the appellant's and respondent's appendices. Almost four weeks after we rendered our decision, Fasolo noted in a letter that he had been informed by the Division that nothing had been done regarding his matter and that his file could not be located. On September 1, two months after the decision, Fasolo again noted in a letter that he had received no information on his case from the Division. On September 9, the Secretary of PERS informed Fasolo that the recalculations were very involved but that he would be sent a check in the near future. On September 16 Fasolo was informed of the revised amounts to be included in his subsequent check but was not informed of the methods by which the Division arrived at these amounts. He was notified that a complete audit would be made of his account at a future date.
*579 Fasolo responded on October 1 acknowledging the receipt of a check of $32,141.22 for pension arrearages but noted he had not received any statement or information as to the calculation of this amount. Fasolo informed the Division that he would deposit the check without prejudice and under protest and that he reserved the right to all other sums due him after an accurate audit had been made. He particularly reserved his right to the return of $13,000 that he paid in January 1975 at the specific request of the Division and also to prejudgment and postjudgment interest on all sums that had been withheld from him, or to the income, in lieu of interest, derived from his money retained by the Division. He asked for a conference with the person doing the computations as well as the attorney handling his matter "in order to try to resolve our problems." The Chief of the Bureau of Retirement responded by return mail. She noted that PERS had issued two checks to Fasolo in early 1977: $6,653, representing the difference between his excess contributions and overpayments previously made to him based on PERS' recalculations at that time; and $1,193 representing excess contributions for insurance benefits. She further noted that he had returned those checks to the Division. She again repeated that clarification of the amounts due could only be made after a complete audit had been made.
Fasolo responded on October 7 and supplied his estimates of the proper payments. He repeated that the delay was forcing him to incur interest payments on a bank loan and reasserted his request for a conference and for the interest and for pre and postjudgment interests. On October 15 Fasolo wrote to the deputy handling his matter. He repeated his previous request and asked for help in expediting his case. He reiterated his demand for the income earned on his money while it had been in the possession of the Board of Trustees.
On November 17 the Chief of the Bureau of Retirement notified Fasolo that the audit had been completed and informed him of the total amounts to be refunded to him. Fasolo apparently received a check for $13,017.77 approximately on December *580 1, 1981 for pension contributions he overpaid at the request of PERS in 1975. Again the method of calculating these amounts was not specified. Fasolo responded by letter on December 4 and re-established his particular requests that had been unanswered: a statement or a computer sheet of his account; the income that had been earned by the money he had overpaid into the fund in 1975; the income that had been earned by the pension arrearages due but not paid to him, and finally postjudgment interest on all money due him because of the unreasonable delay. On December 24 the Secretary of PERS expressed surprise that Fasolo alleged that there had been an unjust delay. On January 6, 1982 Fasolo responded to the Secretary with his first letter indicating his total outrage with the situation. He asked for prompt attention to the issues in his case. On January 28 Fasolo finally received a letter detailing the calculation of his pensions and credits. On February 11 he responded to that letter and indicated the differences in his calculation.
On February 4 Fasolo was notified that the Board of Trustees had denied his request for interest. He was also notified of his right to appeal to the Board and to request a formal hearing. On March 16 Fasolo appealed.
On July 2, 1982 Fasolo was notified that his request for a hearing on the issue of interest on moneys returned had been denied by the Board of Trustees. The Board had determined that a hearing was unnecessary because no substantial facts were in dispute. The Board informed Fasolo of his right to appeal to this court.

I.
Respondent Board of Trustees begins its brief by arguing that Fasolo could and should have raised the issue of interest "during the approximately seven years of litigation that ultimately resulted" in the first appeal. According to respondent, because the earlier case and this one have "an identity of issues, *581 parties and causes of action," this appeal should be barred by "the doctrine of res judicata and the policy of issue preclusion...." This result is necessary to protect against "`the serious burdens'" of "`vexatious repetitive litigation,'" for which principle respondent quoted Lubliner v. Bd. of Alcoholic Bev. Con., Paterson, 33 N.J. 428, 435 (1960), quoted in City of Hackensack v. Winner, 162 N.J. Super. 1, 28 (App.Div. 1978), mod. and aff'd 82 N.J. 1 (1980).
Respondent fails to acknowledge that the two appeals arose in administrative settings, not in a trial court. Rather than seven years of litigation, there appears to have been several years of administrative delay. As outlined above, the first appeal followed a lengthy series of discussions on the proper basis for correct computations of appellant's pension. PERS asked the Attorney General for a formal opinion which it later adopted as its decision. 181 N.J. Super. at 439. Five years after Fasolo retired, a hearing examiner recommended reversal of part of PERS' decision. PERS rejected the examiner's decision and Fasolo appealed to this court. The present appeal arose after PERS refused to include interest in its determination of the moneys due Fasolo.
Respondent seems to suggest that appellant should have raised all possible issues between the parties during the first appeal. However, an appeal is only from the decision rendered below; it is not the time to raise issues that the administrative agency did not address. There is no specific point in the procedural history of the first case at which Fasolo could be held to have waived his right to raise any other issue with PERS. See Restatement, Judgments 2d § 83(2) at 266 (1982):
An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication ...
An adjudicatory format was not used in either the first or second determination by PERS.
In East Orange v. Palmer, 47 N.J. 307 (1966), the court found the New Jersey Highway Authority liable for certain municipal *582 taxes. The case was remanded to the trial court for a modified order for summary judgment from which a second appeal was taken. One issue on that second appeal was liability for interest on the taxes. Because interest was included in the original order, the court noted that that issue should have been raised in the original appeal. Nevertheless the court chose to address that issue in the second appeal because of the "public interest" involved. City of East Orange v. Palmer et al., 52 N.J. 329, 333-334 (1968). We believe that the case before us involves a question of at least as great public interest. Furthermore, the original determination by PERS did not consider interest.
Consolidated Police, etc., Pension Fund Commn. v. Passaic, 23 N.J. 645 (1957), involved a similar fact pattern. An earlier appeal by the same name, at 18 N.J. 137 (1955), confirmed a debt owed to the Fund by the City of Passaic. After the city paid the principal on the debt, the Commissioner demanded interest payments. 23 N.J. at 649. The court did not even suggest that the issue of interest should have been raised in the first appeal.

II.
Appellant presents a series of essentially equitable arguments in this appeal. He first alleges that his funds were held by PERS due to its errors, not his errors, and that PERS was solely responsible for the unreasonable delay of six years in determining the proper pension. He next argues that his money was held in a fund which should be considered a trust to be administered by the Board of Trustees of PERS "on behalf of its number of employees who are the beneficiaries." Those Trustees have certain duties among which are the duty to "make the fund productive" and the duty "to pay income to beneficiaries...." Finally, he argues that failure to pay to him the income earned by his retained funds amounts to an unconstitutional taking of personal property without due process.
Respondent answers that a state agency is not liable for either pre or postjudgment interest unless such an obligation is created *583 by statute or contract. Because the PERS Act, N.J.S.A. 43:15A-1 et seq., includes only two provisions for payment of interest to a member, neither applicable here, respondent argues that payment of interest on any other occasion would conflict with the legislative intent and with the best interest of the PERS fund.
Respondent's first argument is incorrect. On numerous occasions prejudgment interest has been awarded against state agencies. New Jersey's courts have recognized that "it is the general rule that a State is not liable for interest unless by statute or contract it has assumed that liability." City of East Orange v. Palmer et al., 52 N.J. 334 (emphasis added). The same standard has been held to apply to all governmental entities which have been found to have improperly withheld funds. Elizabeth Police Super. Off. Ass'n v. Elizabeth, 180 N.J. Super. 511, 515 (App.Div. 1981) (hereinafter referred to as Elizabeth). See also Youth & Family Serv. Div. v. Middlesex Cty., 188 N.J. Super. 1, 5 (App.Div. 1982).
Respondent, however, ignores the modifications of this general rule. It has long been the law that even in the absence of a statutory provision for interest on an obligation of a governmental entity "a legislative purpose to allow interest ... may be found in the nature of the burden imposed and the relative equities between the beneficiaries...." Consolidated Police, cited above, 23 N.J. at 654. Nor is it necessary to find a "legislative intent" in all cases. As this court has said
such interest may, in a proper case, be awarded in the absence of such a statute because of overriding and compelling equitable reasons. [180 N.J. Super. at 517]
Numerous factors may be considered when reviewing the equities of a particular case. In Elizabeth, 180 N.J. Super. at 518-519, the court noted that it was the party who disputed an arbitration award who wanted "to retain its benefits notwithstanding" the challenge and to receive interest during the time of his challenge. Such a situation appeared to that court to place the interest-seeker in the position of wishing to have "both *584 the bird in hand and the two that may be in the bush...." Id. at 518. Thus, there was no equitable justification for awarding prejudgment interest. Id. at 518-519.
Keeping in mind the general standard that "particular circumspection in the granting of interest is required" when a governmental entity is involved, Youth & Family Serv. Div. v. Middlesex Cty., 188 N.J. Super. at 5, it is helpful to look at other cases considering the propriety of prejudgment interest. In Busik v. Levine, 63 N.J. 351, 358 (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973), the Supreme Court established that such interest is not necessarily considered punitive; it may be "compensatory, to indemnify the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." This is particularly true with a liquidated claim, in which case a loss by the claimant is assumed.
The basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled. [Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 506 (1974)]
Even a "good faith" denial of liability will not toll the payment of interest on a liquidated claim. Kamens v. Fortugno et al., 108 N.J. Super. 544, 552-553 (Ch.Div. 1970), as cited by both Rova Farms, 65 N.J. at 506 and Busik v. Levine, 63 N.J. at 358. Kamens discussed other circumstances which do not toll the accumulation of such interest including the "umbrella of a favorable decision" which is ultimately reversed on appeal, 108 N.J. Super. at 550-551, and a mistaken view of the law. Id. at 553. This is true even where the ultimate obligee only obtained a right to the return of his monies after the statute, under which he had made certain payments, subsequently had been declared unconstitutional. Interest still runs from the dates of his payments. Id.
In an earlier case, the Supreme Court held that equities weighed in favor of the ultimate obligee after establishing simply that the obligor had had the use of the liquidated *585 amount, the obligee had been deprived of the use of it and had been "put to the expense and inconvenience of ... litigating this action to establish ... liability...." Small v. Schuncke, 42 N.J. 407, 416 (1964).
Generally, the trial court has the discretion to review the equities and to grant or deny prejudgment interest. In such cases this court will defer "to that action unless it represents a manifest denial of justice." Elizabeth, cited above, 180 N.J. Super. at 517. However, in this case, prejudgment interest has been denied only by the party from whom the interest is sought. In such a situation fairness seems to require that this court review the equities of the case. This court is not bound by an agency's interpretation of the law. Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93 (1973).
One must first ask if there is any specific factor which would prohibit PERS, as opposed to any other governmental entity, from paying prejudgment interest. N.J.S.A. 43:15A-1 et seq. contains no direct statement on the issue. Respondent asserts that because the PERS act contains two separate instances where interest is payable there is a "clear implication of a legislative intent to limit interest payments by the PERS fund" to those instances and other interest payments cannot be authorized. We disagree. As noted above, Consolidated Police, 23 N.J. at 654, established that legislative intent can also be ascertained from the "relative equities between the beneficiaries." N.J.S.A. 43:15A-41(a) allows a member who withdraws from covered service for any reason other than death or retirement to recover all of his accumulated deductions plus interest. N.J.S.A. 43:15A-41(c) allows interest to be paid on a member's accumulated deductions when the member dies while in covered service.
Rather than viewing these two provisions as revealing a legislative intent to preclude all other interest payments, the provisions should be considered the two primary instances where the Legislature recognized the member would receive no other *586 benefit from having his accumulated deductions retained by PERS fund. A member must either leave a covered service because of retirement, death (§ 41(c)) or "any cause other than death or retirement" (§ 41(a)). Only the member who leaves because of retirement will receive a benefit, in the form of life-long pension payments, from having his accumulated deductions retained by PERS. The other members are entitled to receive interest on their returned funds.
A member who has been required to overpay his contributions, at PERS' direction, obviously receives no benefit from having PERS improperly retain his funds. The Trustees argue that by not providing for payment of interest in such a situation the Legislature has "elected" to have the fund obtain the benefit of the use of the overpaid contributions and delayed benefit payments. This would thereby reduce the cost to all members of PERS. No such election can be read into the statute. To do so would be to say that PERS is by statute permitted to benefit from the improper collection and retention of funds but not from funds properly collected but later returned to members who die or leave service before retirement.
Respondent argues that the members of the Board of Trustees are fiduciaries for all public employees and as such must administer the fund as the statute directs. Thus, because there is no statutory directive to pay the interest, it cannot be done. It is true that
The board of trustees are fiduciaries and therefore have a duty to protect the fund and the interests of all beneficiaries thereof. They must exercise due care, diligence and skill in administering the trust. 54 Am.Jur., Trusts, § 321 at 255. It would not serve the statutory policy to pay out moneys to those not entitled thereto. [Mount v. Trustees of Pub.Emp. Retirement Syst., 133 N.J. Super. 72, 86 (App.Div. 1975)]
However, the duty to act with diligence also requires the board to act with due diligence. In re Vaccaro, 131 N.J. Super. 264, 268 (App.Div. 1974), aff'd o.b. 66 N.J. 151 (1974), held that the board had not acted with "reasonable dispatch" when it took two months and 20 days to process a claim for disability retirement benefits when it was aware that claimant was terminally ill. *587 The court held that "the Board's failure to act with due diligence should not bar recovery of benefits to one otherwise legally entitled thereto." Id. at 268.
One should be able to assume that PERS is likewise under a duty not to assess moneys improperly and to return diligently moneys improperly retained by the fund. The only action of Fasolo that PERS has pointed to as contributing to the nearly seven year delay, was his return of two checks in 1977 that were intended to cover the difference between his excess contributions and overpayments of pension amounts to him. Fasolo had reason to believe that, if it was later determined that he had insufficient contributions in his accounts, his pension status could be adversely affected, and that he would be charged interest on "late" contributions.
Fasolo should not now be penalized for attempting to safeguard his pension status. Nor should PERS benefit from a mistake of law made by it and by the Attorney General. As established by Kamens, 108 N.J. Super. at 550-551, 553, neither a mistaken view of the law nor an incorrect decision from a lower tribunal will toll prejudgment interest. Likewise, a good faith denial of liability will not toll interest.
The "equities" in this case clearly appear to rest with Fasolo. He has been denied the use of a substantial sum of money for an extraordinary length of time through no fault of his own. PERS makes no attempt to justify the length of time it has taken to resolve this case. A governmental entity should not be permitted to benefit from its error in assessing contributions. The courts must be reluctant to allow the government to benefit from improper actions which, though perhaps innocent this time, could be taken willfully in the future.
Finally, it should be noted that PERS may legally require payment of 8% interest on employees' contributions not paid when originally due because an employer failed to inform the employee of his mandatory participation in PERS. Burkhart v. Public Emp. Retirement System, 158 N.J. Super. 414, 423 (App. *588 Div. 1978), interpreting N.J.S.A. 43:15A-54. Fasolo is really asking no more than "mutuality" of remedies.
The question of the rate of interest arises. Respondent does not address this issue. In his reply brief Fasolo argues that he is entitled to the income actually earned by his funds, and not to the "effective interest rate on investments" as established by PERS. He contends that his money was invested at the time of high interest and that he should not be penalized for the lower interest earned by money invested prior to the rise in interest.
There are several possibilities. One is to agree with Fasolo. However, that presents obvious practical difficulties. Another is to adopt the 12% rate established for prejudgment interest in tort actions by R. 4:42-11(b). A third possibility is to adopt the rates of interest established in either N.J.S.A. 43:15A-41(a) or N.J.S.A. 43:15A-41(c)(1). Those rates are not the same and we see no reason to choose one over the other. Finally, the "effective interest rate on investments" could be adopted. We determine that the last possibility should apply here. This choice is less of a penalty than the 12% rate and gives PERS some credit for its "good faith" dispute.

III.
There is no reason to find that the interest should be tolled by the rendering of the favorable first appellate decision.
R. 4:42-11(a) establishes that judgments for the payment of money shall bear simple interest of 12% (or 8% from July 1981, the date of the first appellate judgment until September 13, 1981). Respondent presents no reason why this rule should not apply here. The authors of the rule were aware of the difference between public and private judgment debtors and provided for different results for those groups when assessing prejudgment interest on tort actions. R. 4:42-11(b). No such distinction was made in subsection (a). It is therefore reasonable to conclude that R. 4:42-1(a) requires the imposition of postjudgment interest against a public entity.
*589 Fairness also argues for award of postjudgment interest. A full month after judgment Fasolo was told that his file was lost. Despite repeated requests, Fasolo saw no money for almost three months. PERS had more than six years to "audit" his account and should have been prepared to move with "due diligence."
We conclude that Fasolo should receive interest on his excess contributions from the date of deposit and on his pension arrearages from the date due until the date of final payment.