708 A.2d 699

HUDSON COUNTY CHAMBER OF COMMERCE, HUDSON COUNTY DISTRICT COUNSEL OF LABORERS PENSION FUND, SQUARE PLUS OPERATING CORP., CUNNINGHAM GRAPHICS, INC., AND MARGULIES, WIND, HERRINGTON & KNOPF, A PROFESSIONAL CORPORATION, PLAINTIFFS–RESPONDENTS, v. CITY OF JERSEY CITY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 25, 1997—Decided April 22, 1997.

210

Before Judges DREIER, D'ANNUNZIO and VILLANUEVA.

*Dennis J. Drasco,* argued the cause for appellant (*Lum, Danzis, Drasco, Positan & Kleinberg,* attorneys; *Colin M. Danzis* and *Mr. Drasco,* of counsel and on the brief).

*Robert E. Margulies,* argued the cause for respondents (*Margulies, Wind, Herrington & Knopf,* attorneys; *Mr. Margulies,* of counsel; *Jack Jay Wind,* on the brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).

Defendant, City of Jersey City, appeals from a judgment declaring a payroll tax ordinance of Jersey City invalid because the ordinance did not become effective until statutory authorization for it had expired and the ordinance itself failed to comply with the enabling legislation. We affirm.

Plaintiffs, employers maintaining offices in Jersey City, seek to invalidate an ordinance adopted by defendant in December 1995 imposing a payroll tax and to recover taxes paid under it. A Committee of Petitioners [1] submitted a referendum petition protesting the ordinance, which, according to Judge D'Italia, rendered it "suspended from taking effect" under *N.J.S.A.* 40:69A–185. If fifteen percent of the voters in the municipality sign such a petition, the council must reconsider the protested ordinance and, if the council fails to repeal it, it is submitted to the voters. *N.J.S.A.* 40:69A–184 to –196. However, under a "sunset" provision, *N.J.S.A.* 40:48C–19, authority to impose a municipal payroll tax expired as of January 1, 1996. In January the Committee of Petitioners chose to withdraw the petition instead of submitting the needed additional signatures.

When defendant began to collect its payroll tax for the fourth quarter of 1995, plaintiffs filed a complaint in lieu of prerogative writs in the Superior Court, Law Division on March 25, 1996.

The Jersey City Payroll Tax of 1995 ("the ordinance") provided:

---

[1] The Committee of Petitioners consists of five voters "who shall be regarded as responsible for the circulation and filing of the petition and for its possible withdrawal...." *N.J.S.A.* 40:69A–186.

Sec. 29–3 Tax Imposed

There is hereby imposed on every employer a tax equal to one (1 percent) of the employer[']s payroll, on all payrolls related to services performed on or after the first day of the first month of the calendar quarter in which this ordinance takes effect.

. . . .

Sec. 29–4 Administration of Article

(a) The Director of Finance shall administer and enforce the provisions of this Article and shall:

(1) Adopt and enforce regulations relating to any matter pertaining to the administration and enforcement of this Article including regulations which:

(i) require the reporting and payment of the tax imposed for the preceding calendar quarter on or before the last day of April, July, October and January, respectively;

(ii) provide methods for the enforcement of this Article and for the imposition of penalties for failure to report and pay the tax imposed;

(iii) provide procedure for claims for refunds and repayment of overpayment of taxes.

. . . .

D. This ordinance shall take effect at the time and in the manner as provided by law.

[Jersey City, NJ Ordinance 95–117 (Dec. 7, 1995).]

According to the complaint, no regulations were promulgated pursuant to Section 29–4(a)(1).

The complaint further alleged that council President Thomas DeGise intended that the ordinance would be effective on January 1, 1996. The ordinance was passed on December 6, 1995, and the mayor approved it on December 7, 1995. The complaint noted that under *N.J.S.A.* 40:69A–181 the ordinance could not take effect until at least twenty days after its final passage by the council and approval by the mayor.

On December 26, 1995, a Committee of Petitioners submitted a petition seeking repeal of the ordinance. The petition contained signatures of voters of defendant, Jersey City, purporting to be in excess of fifteen percent of the votes cast in the last municipal election for members of the general assembly. Defendant's clerk

reviewed the petition and determined that some of the signatures were deficient; he advised the Committee of Petitioners that they had ten days to supplement the petition. The Committee of Petitioners withdrew the petition in January 1996.

Some of the petitioners and "many other purported employers" received a letter from Nick Fargo, Chief Financial Officer of defendant, dated March 1, 1996, advising them that their payroll tax payment was due by April 1, 1996. The letter included a 1995 Jersey City Employer Payroll Tax Return and instructions.

Plaintiffs alleged that the ordinance was invalid because: (1) its statutory authority had expired; (2) it did not comply with the enabling legislation; (3) no implementing regulations were proposed or adopted; and other reasons not in issue. Plaintiffs sought to have the ordinance declared invalid and defendant be enjoined from collecting taxes pursuant to it.

On March 25, 1996, the same day the complaint was filed, Judge D'Italia ordered defendant to show cause why it should not be restrained from enforcing the ordinance. Defendant answered the complaint, admitting its factual allegations but denying its conclusions. Defendant also asserted that the complaint was barred by the statute of limitations, and that the Committee of Petitioners committed fraud by gathering facially invalid signatures of people with out-of-town addresses. On April 25, 1996, Judge Gallipoli entered an order denying plaintiffs' application for temporary injunctive relief.

Plaintiffs filed a motion for summary judgment, arguing that the ordinance was invalid because its enabling legislation had expired and the lack of implementing regulations prevented its enforcement. Plaintiffs also contended that the forty-five day limitation period for filing an action in lieu of prerogative writs, set forth in *R.* 4:69–6, did not apply.

Defendant countered that the ordinance was intended to tax the payrolls only in the fourth quarter of 1995, and thus was authorized by statute. It further argued that the number of signatures

on the petitions was insufficient to nullify the ordinance, and that enforcement of the ordinance was only suspended while the petitions were pending. Defendant explained it had not yet proposed any regulations because there was no need for any. Finally, defendant asserted that the forty-five day bar of *R.* 4:69–6 applied.

Defendant submitted a certification of Robert Byrne, City Clerk. Byrne acknowledged receipt on December 26, 1995, of 525 petition pages, containing 6,976 signatures, protesting the ordinance. He explained that under *N.J.S.A.* 40:69A–185, the number of signatures required for a "sufficient petition" was fifteen percent of the votes cast in the last election for members of the general assembly. The last election for general assembly was on November 7, 1995, in which 29,885 votes were cast in Jersey City. Fifteen percent of this figure is 4,483.

Byrne certified that he verified only 3,614 of the signatures on the petitions submitted as "signatures of legal voters of the City of Jersey City." The other signatures either could not be located on the voter registration rolls of defendant, or were people who listed addresses outside Jersey City on the face of the petition.

Defendant also submitted a letter dated January 26, 1996, addressed to Byrne, stating: "The undersigned Committee of Petitioners, pursuant to *N.J.S.A.* 40:69A–191, do hereby withdraw the Petitions previously submitted requesting a Referendum on City Ordinance 95–117 known as the Jersey City Payroll Tax of 1995."

Plaintiffs responded with a certification of Peter T.D. Murphy, Chair of plaintiff Hudson County Chamber of Commerce and a member of the Committee of Petitioners, dated May 3, 1996. Murphy explained that the Committee members determined to withdraw the petition not because they had an insufficient number of signatures, but for other reasons. They were concerned about the cost of an election to both the city and the petitions' supporters. They also believed "that the Referendum was moot at that point due to the expiration of the enabling legislation and failure of the state legislature to extend same."

Judge D'Italia rendered an oral opinion on May 17, 1996. He relied on the provision in the ordinance imposing the tax as of "the first day of the first month of the calendar quarter in which this ordinance takes effect." He reasoned that under "the sunset provision of *N.J.S.A.* 40:48C–19," the tax could "lawfully be imposed" only "on services rendered during the fourth quarter of 1995." He went on to state:

> Nonetheless instead of crafting the ordinance to state, as the coun[ci]l's intention[,] that the ordinance imposed a payroll tax on all services performed during the quarter in which the ordinance was adopted, the council approved language explicitly stating that the tax should be imposed on services rendered during the quarter in which the ordinance takes effect. Linking the taxable period to the effective date, as distinguished from the date of adoption of the ordinance, exposed the ordinance to the impact of the laws relating to referendum petitions.
>
> ... [T]he filing of referendum petitions on December 26, 1995 resulted in the ordinance being "suspended from taking effect" pending the municipal clerk's verification of the sufficiency of the petitions, *N.J.S.A.* 40:69A–185.

The judge found that the withdrawal of the petition and failure to file an amended petition "resulted in the ordinance becoming effective automatically on January 26, 1996." It thus contravened the sunset statute, *N.J.S.A.* 40:48C–19. The judge rejected defendant's argument that it intended the ordinance to impose the tax on services performed in the last quarter of 1995. First, this argument "ignor[ed] the unambiguous language of the ordinance itself." Second, the council president stated that the ordinance would be implemented as of January 1, 1996. Finally, the sunset provision evidenced "legislative disfavor of municipal payroll taxes."

Noting that the council "address[ed] the payroll tax issue very late in the year considering the January 1, 1996 sunset provision," the judge faulted defendant for failing to consider "the possible impact of the referendum petition laws." The judge refused to "rewrite the ordinance to correct ... a legislative oversight."

The judge also rejected defendant's argument that the petition was void *ab initio,* "and the ordinance becomes effective as if the petitions were never filed," since Byrne later determined that the number of signatures was insufficient. According to the judge, "*N.J.S.A.* 40:69A–185 says that the ordinance shall be suspended

from taking effect until the statutory proceedings are concluded. There is no language to suggest that an insufficient petition shall be deemed [void] *ab initio*."

The judge further determined that the ordinance was invalid because it failed to comply with the requirements of *N.J.S.A.* 40:48C–16, and to provide procedures for enforcement, penalties for failure to comply, and refunds of overpayments. The ordinance delegated administration and enforcement to the Director of Finance, who was to promulgate regulations. The judge concluded "that the requirements of the statute are not delegable," and, in any event, no regulations were proposed or adopted.

With regard to the forty-five day limitation period of *R.* 4:69–6, the judge thought that "[t]he date plaintiffs['] right to relief accrued was by no means clear in the circumstances of this case." Further, enlargement of the time, allowed by the rule in "the interests of justice," was appropriate since "the issue presented is one of grave importance to the city government and to the taxpayers."

On May 17, 1996, an order was entered granting summary judgment in favor of plaintiffs, enjoining defendants from enforcing the ordinance, imposing prejudgment interest at a rate of six percent and staying the judgment pending appeal.

Defendant appeals, contending that: (1) the filing of a deficient petition should not result in voiding the ordinance; (2) the ordinance should be construed in a way to render it valid; (3) defendant did not induce plaintiffs to abandon their referendum rights; (4) there is no legislative preference against payroll taxes; (5) the ordinance complied with its enabling legislation; (6) defendant should not be required to pay prejudgment interest; and (7) the forty-five day limitation period of *R.* 4:69–6 bars plaintiffs' action.

## I.

*N.J.S.A.* 40:48C–15 provides: "Any municipality may by ordinance impose and collect an employer payroll tax for general

municipal purposes of the municipality at a rate of 1% of the employer's payroll."

At the time of the judge's decision, *N.J.S.A.* 40:48C–19 provided:

> No tax shall be imposed under any ordinance adopted pursuant to this article with respect to services performed ... in a calendar quarter prior to that in which the ordinance is adopted or on or after January 1, 1996, but any such ordinance shall remain in effect with respect to the right of the municipality to receive reports and enforce and collect taxes due thereunder for any period prior to January 1, 1996.

*N.J.S.A.* 40:48C–19 was amended on June 17, 1996, one month after the judge's decision and order here, as follows:

> No tax shall be imposed under any ordinance adopted pursuant to this article with respect to services performed prior to January 1, 1971, or in a calendar quarter prior to that in which the ordinance is adopted, or in a municipality that has not within two years prior to July 1, 1995 collected taxes or enacted an ordinance imposing a tax, or on or after December 31, 1999; but any such ordinance shall remain in effect with respect to the right of the municipality to receive reports and enforce and collect taxes due thereunder for any period prior to December 31, 1999.
>
> This act shall take effect immediately and be retroactive to January 1, 1996.
>
> [L.1996, c. 33, § 1.]

■ Since the City did not either adopt an ordinance imposing a payroll tax or collect any payroll tax in the two years prior to July 1, 1995, *N.J.S.A.* 40:48C–19, in effect at the time, precludes it from doing so now. Defendant thus may not take advantage of the extension of the "sunset" to December 31, 1999 provided in the 1996 amendment.

The legislative history of the statute supports this interpretation. *Assembly Appropriations Committee, Statement to A. 1566,* (May 13, 1996) states: "Jersey City did adopt an ordinance on December 7, 1995 imposing a payroll tax. However, because the bill allows only municipalities that collected or adopted a payroll tax before July 1, 1995 to continue to impose a tax, the bill ... removes Jersey City's[ ] power to impose a payroll tax."

However, this provision, with its new preclusion, was not effective until January 1, 1996. Therefore, if the ordinance were to be effective in December 1995, before the January 1, 1996 effective

date of this statute, this new preclusion did not apply at that time, and defendant could still collect its payroll tax for the fourth quarter of 1995 only.

As noted earlier, the ordinance itself provided that it would "take effect at the time and in the manner as provided by law." Ordinance 95–117 § 29–7(D). *N.J.S.A.* 40:69A–181(b) and –185 both provide: "No ordinance . . . shall take effect less than twenty days after its final passage by council and approval by the mayor where such approval is required. . . ." Here, the council passed the ordinance on December 6, 1995, and the mayor approved it on December 7, 1995. Thus, under this statute, the ordinance would take effect on December 27, 1995, absent any other pertinent provision or action.

However, the ordinance did not take effect on December 27, 1995, because on December 26, 1995 the referendum petition was filed. *N.J.S.A.* 40:69A–185 provides:

> The voters shall also have the power of referendum which is the power to approve or reject at the polls . . . any ordinance passed by the council, against which a referendum petition has been filed as herein provided. . . . If within twenty days after [the] final passage and approval of [an] ordinance a petition protesting against the passage of such ordinance shall be filed with the municipal clerk and if the petition shall be signed by a number of the legal voters of the municipality equal in number to at least 15% of the total votes cast in the municipality at the last election at which members of the General Assembly were elected, the ordinance shall be suspended from taking effect until proceedings are had as herein provided.

Under the statutory scheme for a referendum, the municipal clerk must determine "whether the petition is signed by a sufficient number of qualified voters" within twenty days after it is filed, and, if the number of signatures is insufficient, the clerk must notify the Committee of Petitioners "at once." *N.J.S.A.* 40:69A–187. The committee then has ten days to file a supplementary petition with additional signatures. *N.J.S.A.* 40:69A–188.

Under *N.J.S.A.* 40:69A–189, "[u]pon the filing of a referendum petition with the municipal clerk, the ordinance shall be suspended until ten days following a finding by the municipal clerk that the petition is insufficient or, . . . until it be withdrawn by the

Committee of Petitioners. . . ." Thus, the Legislature intended that even an insufficient petition suspended the ordinance until the petitioners have had an opportunity to cure the deficiency. "Under the Faulkner Act, an ordinance is suspended from taking effect until the referendum process had been completed." *All Peoples Cong. of Jersey v. Jersey City,* 195 *N.J.Super.* 532, 538, 480 *A.*2d 948 (Law Div.1984) (citation omitted). *N.J.S.A.* 40:69A–184, 185.

## II.

The sole issue before us is whether Judge D'Italia correctly decided that the ordinance could not apply to the fourth quarter of 1995. The language of *N.J.S.A.* 40:48C–19 does not speak of the effectiveness of the ordinance, but rather refers to the calendar quarter prior to that in which the ordinance is adopted. The question, therefore, is whether the ordinance was adopted in December 1995 or in January 1996. If the latter, it is barred by the statute. There is a difference between the adoption of the ordinance and its effective date. Under *N.J.S.A.* 40:69A–181b and 40:69A–185, an ordinance may not take effect "less than twenty days after its final passage by council and approval by the mayor where such approval is required." Since the ordinance was passed on December 6, 1995 and approved by the mayor December 7, 1995, the twenty-day period would have run within the month of December. The referendum petition stayed its taking effect, but the process of its adoption had been concluded on December 7, 1995. The effectiveness of the ordinance was suspended upon the filing of the petition and then for ten days following the municipal court clerk's finding that the petition was insufficient or until its withdrawal by the Committee of Petitioners, *N.J.S.A.* 40:69A–189.

█ It is the terms of the ordinance, however, that led to its defeat. Simply stated, the ordinance was poorly drafted. Instead of stating that the payroll tax would be imposed on services performed for the quarter in which the ordinance was passed, it stated that the payroll tax would be imposed on "services per-

formed on or after the first month of the calendar quarter in which this ordinance takes effect." Ordinance 95–117 § 29–3. This was recognized by Judge D'Italia, as quoted earlier. Although the referendum did not change the date on which the ordinance was passed, it delayed the date on which the ordinance took effect. The ordinance took effect in January 1996, and, therefore, by the terms of the ordinance the taxes are imposed for the first quarter 1996 rather than the fourth quarter 1995. As Jersey City's statutory authority to impose payroll taxes expired as of January 1, 1996, the ordinance is void.

■ Furthermore, the ordinance itself was incomplete in that *N.J.S.A.* 40:48C–16 requires that such an ordinance provide a procedure for enforcement penalties and refund. The ordinance in question did none of these things, but rather delegated the administration and enforcement of the ordinance to the Director of Finance. Even if these functions were delegable, no timely regulations were proposed or adopted.

### III.

Defendant also argues, for the first time on appeal, that the ordinance was not subject to the referendum provisions of the *N.J.S.A.* 40:69A–184 to –196 ("Faulkner Act"), because it was an administrative, rather than legislative, action.

■ Since this issue was not raised below, it need not be considered unless it involves jurisdiction or a matter of substantial public interest. *Nieder v. Royal Indemnity Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.2d* 142 (1973). Whether this ordinance is covered by the Faulkner Act could be considered a matter of substantial public interest, since implementation of the payroll tax, even for only the fourth quarter of 1995, would affect most employers in Jersey City, and would probably provide substantial revenue.

■ We find no merit to defendant's argument. Under *N.J.S.A.* 40:69A–185, the voters shall have the power of referendum, to approve or reject at the polls "any ordinance . . . passed

by the council, against which a referendum petition has been filed...." There is no indication of any legislative intent that municipal imposition of a payroll tax should be excluded from the Faulkner Act. The payroll tax was subject to the referendum power of the voters.

## IV.

Defendant objects to the award of prejudgment interest, which the judge said would "grant complete relief to the plaintiffs."

The decision to award or deny prejudgment interest is within the discretion of the trial judge. *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 *N.J.* 464, 478, 541 *A.*2d 1063 (1988). The purpose is compensatory, "to indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been delayed." *Busik v. Levine*, 63 *N.J.* 351, 358, 307 *A.*2d 571, *appeal dismissed*, 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.*2d 733 (1973). We "usually will defer to the trial judge's exercise of discretion unless it represents a manifest denial of justice." *County of Essex v. Waldman*, 244 *N.J.Super.* 647, 667, 583 *A.*2d 384 (App.Div.1990), *certif. denied*, 126 *N.J.* 332, 598 *A.*2d 890 (1991).

Defendant argues that "[w]here the debtor is a governmental agency and interest in the cause is not provided for by statute, particular circumspection in the granting of prejudgment interest is required and a showing of overriding and compelling equitable reasons must be made in order to justify the award." *Bd. of Educ., City of Newark, Essex Cty. v. Levitt*, 197 *N.J.Super.* 239, 244, 484 *A.*2d 723 (App.Div.1984); *accord Youth and Family Serv. Div. v. Cty. of Middlesex*, 188 *N.J.Super.* 1, 5, 455 *A.*2d 1119 (App.Div.1982). In *Levitt*, however, the court did not consider prejudgment interest because petitioners did not request it. *Levitt, supra*, 197 *N.J.Super.* at 248, 484 *A.*2d 723. In *Youth and Family Serv. Div., supra*, both parties were public entities and the court upheld the award of prejudgment interest as "a reasonable exercise of discretion." 188 *N.J.Super.* at 5, 455 *A.*2d 1119.

 Prejudgment interest has been awarded against public entities in appropriate situations, as in the case of *Fasolo v. Div. of Pensions,* 190 *N.J.Super.* 573, 587, 464 *A.*2d 1180 (App.Div.1983), (suit for reimbursement of overpayments made to the Public Employees' Retirement System). *See also Emerick v. Teaneck Bd. of Educ.,* 221 *N.J.Super.* 456, 464–65, 534 *A.*2d 1044 (App.Div. 1987) (court declined to interfere with the trial judge's award of prejudgment interest against a public entity, noting that "[d]efendant had the use of plaintiff's money for the interim period. . . .").

Here, unlike *Fasolo, supra,* there was no passage of an inordinate length of time, nor did defendant attempt to benefit from its error. Nevertheless, defendant had the use of plaintiffs' money. Despite the courts' reluctance to award prejudgment against a public entity, defendant failed to show that the judge abused his discretion in making the award.

## V.

Defendant's final contention is that the judge erred in determining that plaintiffs' action was not barred by *R.* 4:69–6, which provides:

> (a) General Limitation. No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed. . . .

> . . . .

> (c) Enlargement. The Court may enlarge the period of time provided in paragraph (a) . . . of this rule where it is manifest that the interest of justice so requires.

The judge believed that the date of accrual of plaintiffs' right to relief was unclear. He also determined that enlargement of the time was appropriate since the issue was important to all parties.

 Generally, the right to review the validity of a municipal ordinance accrues on the date on which it was adopted. *Home Builders League, etc. v. Evesham Tp.,* 174 *N.J.Super.* 252, 256, 416 *A.*2d 81 (Law Div.1980). That date here was December 7, 1995,

and the complaint, filed on March 26, 1996, was out of time. Defendant asserts that even if the date on which the Committee of Petitioners withdrew the petition, January 26, 1996, were utilized, the date the complaint was filed would still be beyond the forty-five day time limitation.

In *Brunetti v. Borough of New Milford,* 68 *N.J.* 576, 586–87, 350 *A.*2d 19 (1975), a constitutional challenge to a rent-control ordinance, the Court explained that the forty-five day limitation period of *R.* 4:69–6 should be enlarged under subsection (c) when the case involves "(1) important and novel constitutional questions; (2) informal or *ex parte* determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification." *Id.* at 586–87, 350 *A.*2d 19 (footnotes omitted). *Accord Reilly v. Brice,* 109 *N.J.* 555, 558, 538 *A.*2d 362 (1988) (court reasoned that the time should be enlarged because the challenge to the municipal contract was "based on consideration of public rather than private interests.").

New Jersey courts frequently relax the forty-five day limitation requirement of *R.* 4:69–6 when the public interest is involved, including challenges to ordinances. For example, in *Calligy v. The Mayor and Council,* 284 *N.J.Super.* 365, 372, 665 *A.*2d 408 (Law Div.1995), the court enlarged the time period to allow a challenge to an ordinance assigning the municipal court judge to a department of municipal government. In *Ocean Cty. Realtor Bd. v. Beachwood Boro.,* 248 *N.J.Super.* 241, 247–48, 590 *A.*2d 736 (Law Div.1991), the court enlarged the time period to allow a challenge to an ordinance which required payment of water and sewage charges before a certificate of occupancy would be issued. *See also Pucillo & Sons v. Belleville Tp.,* 249 *N.J.Super.* 536, 551, 592 *A.*2d 1218 (App.Div.), *certif. denied,* 127 *N.J.* 551, 606 *A.*2d 364 (1991).

In any event, this challenge to the payroll tax ordinance is as important to the public as the aforementioned disputes. The

validity of an ordinance, especially an ordinance that affects most of the employers in a city, is an issue of important public interest.

The judge properly refused to apply the time limitation of *R.* 4:69–6.

Affirmed.